20 P.(2d) 918

## In re ATCHISON, T. & S. F. RY. CO. et al.

### No. 3822.

Supreme Court of New Mexico.
March 28, 1933.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for State Corporation Commission.

W. C. Reid and E. C. Iden, both of Albuquerque, for respondents.

BICKLEY, Justice.

The Atchison, Topeka & Santa Fé Railway Company discharged its regular agents at the stations of Dona Ana and Capulin, and substituted therefor immediately what is known as "resident agents." These resident agents perform practically all of the duties of a regular agent, other than telegraph work and accounting; that is to say, it is necessary for the parties who order shipments into these stations to have the freight thereon prepaid, and, in sending them out, the shipments are sent "freight collect." There was no change in railway express service at these points, and the Western Union Telegraph business is of practically no importance. No authority to make this change in service was requested of the State Corporation Commission under chapter 26 of the Laws of 1929. Upon learning of these changes without such authority, the State Corporation Commission issued an order upon the railway company to show cause why it should not proceed in accordance with said chapter 26 before discontinuing its agents. Hearing was had upon the order to show cause, and the commission by its order di-

rected the railway company and the Western Union Telegraph Company to re-establish regular agents with assigned hours at said stations, "and continue such agents until such time as they take the proper steps, as provided by law, to have the same heard and determined whether it is a burden upon the carriers to maintain such an agency."

The railway company answered, and respondents appeared in response to the citations and asserted that chapter 26, Laws 1929, is void and of no effect by reason of being inconsistent with and in conflict with the provisions of sections 7 and 8 of article 11 of the Constitution of New Mexico. It is claimed that the provisions of chapter 26, Laws 1929, deny to the railway company:

"(a) The Constitutional right to have the Supreme Court decide the question of adequate agents and station facilities on its merits.

"(b) The Constitutional right of not having placed upon it the burden of proof at all hearings relative to adequate agents and station facilities.

"(c) The Constitutional right of managing its own business, as to providing agents and station facilities, subject only to the right of the Commission, with the concurrence of the Supreme Court—if requested—upon due notice and hearing, to require railroads to provide and maintain adequate agents and facilities.

"(d) Said Chapter 26 of the Laws of 1929 contravenes the provisions of the Constitution of the State of New Mexico, providing that on the question of adequate agents and station facilities the Supreme Court of the State shall be the final arbitrator, and shall have power to enforce its orders in such matters by fine, forfeiture, mandamus, injunction, contempt or other appropriate proceedings, whereas, said Chapter 26 denies all of such Constitutional proceedings, except by fine only."

The respondent railway company offered some evidence to show that the agency had not been *discontinued,* but the character of the service had merely been changed, and a witness adverted to the fact that the company would not be justified by the business in keeping a regular agent when the following occurred:

"Commissioner Baca: I guess this is a case only of jurisdiction before the Commission and not whether that station will pay or not, don't you think so. I don't know if that testimony is material.

"Mr. Reid: It is just a question of jurisdiction?

"Commissioner Baca: I think so. It is a matter for the Commission to determine at the time of your application whether that justifies the agent or not.

"Mr. Reid: I think you are right about that. I can see the Commission is not prepared to show anything to the contrary.

"Commissioner Baca: No.

"Mr. Reid: Then we will just close our case and submit it."

The commission introduced no evidence except a printed list of "Open and Prepay Sta-

tions" showing stations having agents in charge and stations to which freight charges must be prepaid. As to the stations in question, the following note appeared therein: "No Agent. Freight must be prepaid."

At the close of the hearing, the following order was entered by the Commission: "It is therefore hereby ordered that the Atchison, Topeka and Santa Fe Railway Company, Railway Express Agency, Inc. and Western Union Telegraph Company, on or before ten days from the date of this order, re-establish regular agents with assigned hours at Dona Ana and Capulin, New Mexico, and continue such agents until such time as they take the proper steps *as provided by law* to have the same heard and determined whether it is a burden upon the carriers to maintain such agencies." The words we have italicized doubtless refer to chapter 26 L. '29.

It is apparent that the situation is quite similar to that existing in the case of State Corporation Commission v. A., T. & S. F. R. Co., 32 N. M. 304, 255 P. 394, where we decided: "A station agency, not established by order of the State Corporation Commission, may be discontinued by a railroad company without permission of the commission; and an order of the commission that the agency be re-established is unenforceable, if based on the failure to obtain permission to discontinue it, and not upon a showing that the public interest reasonably and justly demands the service."

Our conclusion is controlled by that decision, unless the controlling principles therein announced have been abrogated by chapter 26,

Laws 1929, the material parts of which are as follows:

"Section 1. That hereafter no railway, transportation or transmission company shall discontinue any railway station, agency or agent at any railway station in this State without first submitting to the State Corporation Commission a petition alleging that such station or agency or agent is no longer a necessary facility for the accommodation of passengers, and for receiving freight and express, and constitutes an unnecessary burden and expense upon such railway, transportation or transmission company, and praying for an order of the State Corporation Commission permitting the discontinuance of said station, agency or agent. That such station, agency, or agent shall not be discontinued until a hearing shall be held by the State Corporation Commission and an order of said commission entered authorizing the discontinuance of such station, agency or agent.

"Sec. 2. That within 60 days from the date of the filing of said petition, a hearing shall be held by the State Corporation Commission after due notice to the said petitioner and all other parties concerned, and at the said hearing the burden of proof to sustain the right to discontinue said station, agency or agent shall be upon the said petitioner to establish by substantial evidence.

"Sec. 3. That any railway, transportation or transmission company violating provisions of this act shall be guilty of a misdemeanor and shall be fined in a sum of not to exceed $1,000 and not less than $500.00."

The answer to this question depends upon the constitutionality of said statute, and this is to be determined by a consideration of the nature and scope of the powers of the commission.

We will be required to determine whether the grant of power to the commission is exclusive as to the present subject-matter, or whether there may be discovered a reserve power in the Legislature.

That the power of the commonwealth exists to regulate the business of common carriers and transmission companies, adverted to in the Constitution, we assume. That within constitutional limits this power of regulation is a proper function of the Legislature is also conceded. A glance at territorial statutes shows that regulation was pursued by the Legislature. The Constitutional Convention dealing with the subject set up a commission with unusual functions. Article 11 vests in the commission paramount authority to make decisions relative to questions given to it therein, subject to review and enforcement on removal to the Supreme Court. While it seems somewhat patterned after certain provisions of the Virginia and Oklahoma Constitutions, there is a difference, in that in those Constitutions "The authority of the commission (subject to review on appeal) to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, shall be paramount; but its authority to prescribe any other rules, regulations, or requirements for corporations or other persons, shall be subject to the su-

perior authority of the Legislature to legislate thereon by general laws."

This provision in those Constitutions clearly reserves to the legislative department a power of regulation. This is not true of the New Mexico Constitution. We do not discover any provision for a paramount authority in the commission or in the Legislature as to any matter in which both may exercise power, and yet there should be paramount or exclusive authority in the one or the other if harmony and symmetry are desired and had in the exercise of the power "to require railway companies to provide and maintain adequate depots, stock pens, station buildings, agents, and facilities for the accommodation of passengers and for receiving and delivering freight and express."

Our article 11 in many respects and particularly as to the extent and nature of the power vested in the commission is more like article 15 of the Arizona Constitution. We find very enlightening the comments made on the Arizona Constitution, by Mr. Justice Ross in State v. Tucson Gas, Electric Light & Power Company, 15 Ariz. 294, 138 P. 781, 784.

We quote some of the provisions of section 7 of article 11, portions of which are italicized for emphasis: "The commission shall have power *and be charged with the duty* of fixing, determining, supervising, regulating and controlling all charges and rates of railway, express, telegraph, telephone, sleeping-car, and other transportation and transmission companies and common carriers within the state; to require *railway*

*companies* to provide and maintain adequate depots, stock-pens, station buildings, *agents* and facilities for the accommodation of passengers and for receiving and delivering freight and express; and to provide and maintain necessary crossings, culverts and sidings upon and alongside of their road-beds, whenever in the judgment of the commission the public interests demand, and as may be reasonable and just. The commission shall also have power *and be charged with the duty* to make and enforce reasonable and just rules *requiring the supplying of cars and equipment* for the use of shippers and passengers. * * * The commission shall have power to change or alter such *rates,* to change, alter or amend its *orders, rules, regulations* or *determinations,* and to *enforce* the same *in the manner prescribed herein;* * * * and it shall have power, upon a hearing, to determine and decide any question given to it herein. *' * * "

Section 8 is as follows: "The commission shall determine no question or issue any order in relation to the matters specified in the preceding section, until after a public hearing held upon ten days' notice to the parties concerned, except in case of default after such notice."

Section 4 provides: "The commission shall prescribe *its own rules* of order and procedure, except so far as specified *in this constitution."*

"The expression of one thing is the exclusion of another." "Broom, in his Legal Maxims, says that no maxim of the law is of more general and uniform application; and it is never more applicable than in the construction and interpretation of statutes. Whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, viz., that the thing shall not be done otherwise." 19 Cyc. 23.

We think this maxim has a special application here. If the Constitution had intended that the legislative department should pervade the field so to be occupied by the Commission, it has failed to so indicate unless by the provisions hereafter to be noticed.

■ If power existed in the Legislature to share in this authority, it would carry with it necessarily power to supplant, in a measure at least, the functions of the commission, for the power once conceded, it would be unlimited, unless we were required to hold that the power of the commission, though not exclusive, is *paramount.* Or, if the commission may be and is "charged with the duty * * to require railway companies to provide and maintain * * * facilities for the accommodation of passengers and for receiving and delivering freight and express," and the Legislature may do the same thing, then the transportation and transmission companies named in this article would be placed in the embarrassing dilemma of trying to follow the rules and regulations pertaining to this public service of two supervising authorities, an impossibility where such rules and regulations differ. In the latter case, conflict of authority and power would exist, and

confusion and uncertainty would result in the administration of the law.

"The commission shall have power and be charged with the duty * * * to require railway companies to provide and maintain adequate * * * agents and facilities for the accommodation of passengers and for receiving and delivering freight and express."

This language is not merely directory, but mandatory, and, unless and where the Constitution may in other places give the power to the Legislature to prescribe rules and regulations governing the matter, vests the exclusive power to do so in the commission. Where the Constitution has said that the commission has the power and is charged with the duty to require a common carrier to do a certain thing, it is the last, the highest, and controlling fundamental law as to that matter. No act of the Legislature, for it must proceed in accordance with the terms of the Constitution, can exercise the power, or place it elsewhere.

█ █ It was clearly the policy of the framers of the Constitution, and the people in adopting it, to take the powers of regulation of common carriers in certain respects from the legislative branch and vest them in the commission, whose powers and jurisdiction are sui generis, and whose functions in the aggregate necessarily comprehend those which ordinarily are separately vested in the legislative, judicial, and executive departments of the government, respectively. See State Corp. Comm. v. A., T. & S. F. R. Co., supra. From this fixed, definite, and certain policy, as found in the Constitution, of imposing such powers and duties upon the commission, there arises an inhibition against their exercise by the Legislature as insuperable as if expressly prohibited to it. Pursuing this line of argument, the Arizona Supreme Court, in State v. Tucson Gas, Electric Light & Power Co., supra, said: "Beatty, Chief Justice, in State v. Hallock, 14 Nev. 202, 205, 33 Am. Rep. 559, 561, in discussing constitutional policy and prohibition by implication, said: 'It is true that the Constitution does not expressly inhibit the power which the Legislature has assumed to exercise, but an express inhibition is not necessary. The affirmation of a distinct policy upon any specific point in a state Constitution implies the negation of any power in the Legislature to establish a different policy. "Every positive direction contains an implication against anything contrary to it which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, the erection of the principal courts of justice, create implied limitations upon the lawmaking authority as strong as though a negative was expressed in each instance." People v. Draper, 15 N. Y. 544. The presumption is always that the positive provisions of a Constitution are mandatory and not merely directory (Cooley's Const. Lim. 78, 79), and there is nothing to overthrow this presumption with respect to the provisions under discussion.'"

In order that the commission might act intelligently, justly, and fairly by the trans-

portation and transmission corporations and the general public, it is provided in the Constitution that the commission shall be permanent; that the terms of office of the respective commissioners shall not expire at one time; that officers, agents, and employees of transportation and transmission companies, while representing such companies, and persons financially interested therein, are disqualified from holding office as a member of the commission, or from performing any of the duties thereof, and no commissioner shall be qualified to act upon any matter pending before the commission, in which he is interested, either as principal, agent, or attorney. There are no such restrictions upon holding the office of member of the Legislature. The commission is given power to appoint and remove its clerk, and such other officers, assistants, and subordinates as may be prescribed by law. The Attorney General of the state, or his regularly authorized representative, shall be the attorney for the commission; it is therein declared that the Legislature shall provide suitable quarters for the commission and funds for its lawful expenses, including necessary traveling expenses, witness fees, and mileage, etc.

Article 3 of the New Mexico Constitution provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted."

The functions of the commission are not confined to any of the three departments named, but its duties and powers pervade them all (see State Corp. Comm. v. A., T. & S. F. R. Co., supra); hence the provision in article 3 "except as in this constitution otherwise expressly directed or permitted."

In State v. Tucson Gas, Electric Light & Power Company, supra, the court in the neighboring state of Arizona, considering constitutional provisions similar to our article 11, § 7, said: "Whatever the reasons and influences that may have prompted the framers of the Constitution to endow the Corporation Commission with such extraordinary and unusual powers, it is a well-known fact that there has long existed a deep-rooted dissatisfaction with the results obtained through the Legislatures of the county in their efforts to adjust and regulate rates and classifications between the general public and public service corporations. While the power to control and regulate those matters by the lawmaking body has been frequently upheld, the lack of full information on the part of the legislator, and inadequacy of time and means of investigation, have tended to foster litigation, with the result of suspending and often of defeating the object aimed at, rather than to secure just and reasonable classifications, rates, charges, and regulations. The unwisdom and impracticability of imposing upon the courts, in the first instance, this kind of litigation has frequently been adverted to by the courts."

These observations apply with equal force here.

Support is given to the conclusion we here reach, by legislative construction, for by House Joint Resolution No. 35, approved March 11, 1921, there was proposed a constitutional amendment to be known as section 19 of article 11, a portion of which is as follows:

"Sec. 19. The Legislature may by enactment change, alter or enlarge the powers and duties of the State Corporation Commission created by Section 1 of this article for the control and regulation of corporations and may change or alter the provisions for the enforcement of its orders.

"Until the Legislature shall otherwise provide any order made by the commission fixing or changing any charge or rate or relating to any matter within its authority shall be binding upon the carrier, or company, or person to whom the same is directed and shall be enforced by the Supreme Court according to the terms of such order unless changed or modified by said court on a hearing applied for by such carrier, company or person within a reasonable time limited in such order.

"Upon any hearing or proceeding in any court upon any order issued by the commission within the scope of its authority the burden of proof shall be upon the carrier, company or person to whom such order is directed to show the unreasonableness of any charge or rate fixed or requirement specified in such order and such court may of its own motion and shall upon request of any interested party require or authorize additional evidence."

The proposed amendment was defeated at the 1922 general election by a vote of 16,-806 "For" and 23,644 "Against."

There is a reservation of power in the Legislature manifested in section 13 of article 11 as to corporations, generally, as follows: "The legislature shall provide for the organization of corporations by general law. All laws relating to corporations may be altered, amended or repealed by the legislature, at any time, when necessary for the public good and general welfare, *and all corporations, doing business in this state, may, as to such business, be regulated, limited or restrained by laws not in conflict with the constitution of the United States or of this constitution.*" See Melaven v. Schmidt, 34 N. M. 443, 283 P. 900. The provisions of this section apply to all corporations, and doubtless include those doing a transportation or transmission business. But, as to the business of these latter, the power to regulate reserved to the Legislature must relate to some phase of such business not pertaining to the power "to require railway companies to provide and maintain adequate * * * agents and facilities for the accommodation of passengers and for receiving and delivering freight and express," which power or regulation is reposed in the commission. This is also true as to reservation of power in the Legislature contained in section 6 of article 11, relative to rules and regulations pertaining to the issuance of charters and amendments and

extensions thereof, and forms of reports required to be made by corporations.

From all of the foregoing, we conclude that the people by their Constitution have said, in plain and unequivocal language, that "the Commission shall prescribe *its own* rules of order and *procedure*, except so far as specified *in this constitution*," and, failing to find it therein specified that the Legislature may make rules of procedure as to hearings, "to determine and decide any question given to it herein" (section 7), we conclude that this power is granted exclusively to the commission, and is not to be exercised by the Legislature.

It follows that chapter 26, Laws 1929, in so far as it purports to provide a rule of procedure for such hearings by the commission, offends the Constitution and is therefore void. As to whether, in view of the foregoing, the act might stand in its attempt to create a misdemeanor, we have grave doubts, but that issue, not being before us, is not decided. We have not attempted to differentiate between authority as related to the various respondents in this case. The Constitution, article 11, § 7, dealing as to service, seems to apply to railroad companies only. In re Wallace Transfer Company, 35 N. M. 652, 6 P.(2d) 199. Whether chapter 26, Laws 1929, is intended to be broader in scope so as to affect transportation and transmission companies other than railroads, we do not decide.

The order in the case at bar was made upon the theory that the respondents had no right to change or discontinue the agency service at Dona Ana and Capulin, without justifying its action to the commission and obtaining its order of approval, as required by chapter 26, Laws 1929. No claim is made by the Commission that the order is based upon any other theory or determination.

For the reasons stated, we must decline to enforce the order of the commission in the case at bar. It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and ZINN, JJ., concur.