337 P.2d 943

**MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Petitioner,**

v.

**STATE CORPORATION COMMISSION of New Mexico, Respondent.**

No. 6473.

Supreme Court of New Mexico.

April 9, 1959.

Akolt, Turnquist, Shepherd & Dick, Denver, Colo., Bigbee & Stephenson, Sante Fe, for petitioner.

Fred M. Standley, Atty. Gen., Alfred P. Whittaker and Joel B. Burr, Jr., Asst. Attys. Gen., for respondent.

CARMODY, Justice.

The petitioner, Mountain States Telephone and Telegraph Company, on August 4, 1958, filed with the State Corporation

Commission new tariffs for the adjustment of telephone rates, with respect to eight communities consisting of four local calling areas, which were to be effective September 4, 1958. On August 21, 1958, the Corporation Commission entered an order directing what amounted to a general investigation as to rates throughout the State of New Mexico, and in addition set for hearing on September 2, 1958, the matter of the suspension of the proposed tariffs. On this latter date, what is termed a "hearing" was held, and as a result the respondent Corporation Commission entered its order suspending the effective date of the new tariffs for a period of not more than ninety days or until the determination by the commission of the reasonableness and lawfulness of the rates. The order also provided that the commission would enter a further order setting the time and place for hearing of a complete statewide investigation. The following day, on September 4th, the petitioner made application for removal to this court, and on the same day the respondent entered its order of removal.

A brief background is deemed essential for an understanding of the issues involved. In 1954, following a decision of this court, the rates and tariffs of the petitioner were put in effect by the Corporation Commission, including a graduated classification of exchanges according to the number of telephones in use in an area. Then in November of 1957 the company filed tariffs providing for a similar type of rate adjustment as in the instant proceeding, for four local calling areas (the term "calling area" is used to mean a telephone exchange in one community or in two or more communities in close proximity to each other which have a common exchange and not charging a toll for telephone calls between the two communities). As a result, extended hearings were had in the communities involved, and on March 4, 1958, the respondent accepted the tariffs and approved the rate changes. It was mentioned during these original hearings that there were other local calling areas that would shortly be brought to the commission's attention because of the tremendous increase in the number of telephones in the areas which, under the general scheme put into effect in 1954, would place these additional areas in a different category and allow the company an increase in the rate charge per telephone. For example, one of the communities involved in the instant case is Grants, and in 1954 it had 676 telephones which placed it in the classification of Group 2 of exchanges having from 401 to 1,100 telephones. At the time of the filing of the proposed tariffs, the number of telephones in Grants was 2,320, which would place it in Group 3 comprising exchanges which have from 1,101 to 2,800 telephones.

The petitioner company and, to some extent, the respondent commission feel that

the hearings held prior to March 1958 are material with respect to the tariffs now in issue, and for this reason there is before the court on the removal the entire transcript of all the testimony taken in the hearings after November 1957 in addition to a transcript of what occurred on the all-important date for our purposes of September 2, 1958.

Basically the issue in this proceeding is whether the order of suspension is within the authority conferred on the respondent commission by Article 11 of the Constitution of the State of New Mexico.

To answer this question, it is necessary to mention briefly the events which occurred on September 2, 1958. The commission was called to order and the attorney for the petitioner made an extensive statement giving the commission the background of the proposed increase in tariffs and the position taken by the petitioner. This statement took up most of the morning session, and immediately following the statement one of the commissioners moved that the tariffs be accepted. This motion was never put to a vote. Then the chairman moved that a state-wide investigation be made of the tariffs and rates of the telephone company, and that the new tariffs be suspended until such hearings could be completed. There followed thereafter page after page of discussion between at least two of the commissioners as to the purpose and possible outcome of the state-wide inquiry, joined in occasionally, in response to questions, by the attorney for the petitioner. At the time of the noon recess, no solution had been achieved, and the hearing was recessed until the afternoon. During the afternoon, there continued to be discussion, principally between two commissioners, finally resulting in what seemed to be an agreement by a majority of the commission that the state-wide rate investigation should be undertaken and that the proposed tariffs should be suspended until the investigation was completed. There was at no time during this entire day a single witness sworn, nor any evidence of any nature submitted to or by the commission. The commission was basing itself for its stand upon a rule which it had adopted in 1953 which provides as follows:

"Section 8. *Suspension of Rates.*

"Whenever there is filed with the Commission by any company subject to these rules herein any schedule proposing a new rate or rates, the Commission may, either upon complaint or upon its own initiative, upon ten (10) days' notice, enter upon a hearing concerning the reasonableness or lawfulness of such proposed rate or rates, and pending such hearing and decision thereon, the Commission, upon filing with such schedule and delivering to such company a statement, in writing, of its reason therefor, may, at any

time before they become effective, suspend the operation of such rate or rates but not for a longer period than ninety (90) days beyond the time when such rate or rates would otherwise go into effect, unless the Commission shall find that a longer time will be required, in which case the Commission may extend the period for not to exceed (60) days; provided and notwithstanding any such order of suspension, such company may put such proposed rate into effect on the date when they would have become effective if not so suspended, by filing with the Commission a bond with such company as principal and surety or sureties in a reasonable amount subject to the approval of the Commission, payable to the State of New Mexico, as express trustee, for and on behalf of such consumers or users of the service performed by such company herein or, in the alternative, payable to the consumers or users of the service performed by such company herein upon reasonable and proper demand to indemnify aforesaid consumers or users of the aforesaid service for the sole purpose of indemnifying aforesaid consumers or users of sums in excess of those authorized and found to be reasonable and lawful by the Commission, or there may be substituted for such surety bond such other arrangements for the protection of the consumers or persons utilizing the services of the person subject to these rules herein satisfactory to the Commission.

"Before the entry of any order of suspension, as above provided, the Commission shall hold a hearing upon such order, as required by Article 11, Section 8, of the Constitution of the State of New Mexico, and give required notice therein.

"If, after any such hearing, the Commission finds any such rate or rates to be unlawful or unreasonable, or both, or any part thereof, and the Commission having determined the reasonable or lawful rate or rates to be charged by such person subject to these rules herein, and shall fix the same by Order, or order such company to fix such reasonable and lawful rates in accord with the findings of the Commission, such rate or rates as fixed or filed in accord hereof are thereafter to be observed until changed, as provided in the Constitution of the State of New Mexico and these rules herein."

For all practical purposes, this proceeding is an attack upon this rule, the petitioner contending that the rule and the order issued thereunder are in excess of the commission's authority as given it by §§ 4, 7 and 8, Article 11 of the New Mexico Constitution. This, of course, is strongly

controverted by the respondent. The petitioner also contends that in any event the order of the commission is unreasonable, arbitrary and capricious, and should not be enforced by this court.

This brings us to the questions for our determination, and we must first determine whether or not under the constitution this court has jurisdiction to hear and decide the case at this time. The constitution is plain that the Corporation Commission has the duty to remove a case to the Supreme Court when any company or corporation refuses to comply with an order of the commission. So also the company or corporation or any party has the right of removal in a proper case.

■ In the instant proceeding, we do not have exactly either of these situations. The commission has ordered and the company has removed. However, there has not been any failure or refusal as such to obey the order on the part of the company. If the company were to refuse to obey the order, then it would be the duty of the commission to remove. Such is not the case. At the most, it can be said that there is a "prospective refusal" on the part of the company to obey the order, and it is upon this basis that it removed the same. We feel that a prospective refusal in this particular case is the equivalent of a failure or refusal to obey the order and that we have jurisdiction to hear the case. See

State Corporation Comm. v. Mountain States Tel. & Tel. Co., 1954, 58 N.M. 260, 270 P.2d 685; Seward v. Denver & R. G., 1913, 17 N.M. 557, 131 P. 980, 46 L.R.A., N.S., 242; In re Southern Pac. Co., 1932, 37 N.M. 11, 16 P.2d 402.

■ We then proceed to the consideration of the so-called "hearing." In the transcript which has been filed with us, there are approximately 800 pages of testimony and exhibits relating to the tariffs which were approved in March of 1958. However, can it be said that this testimony could be considered by the commission, at least in the absence of agreement by all parties, to have any bearing upon the question of the tariffs filed on August 4, 1958? There certainly was no agreement that it might be considered, although the petitioner of necessity would have to submit a great deal of the same testimony as having a direct relation upon the new schedule of tariffs. In any event, the burden is on the commission to produce evidence warranting its action, and as to this the record is silent. In re Coal Rates in New Mexico, 1918, 23 N.M. 704, 171 P. 506.

■ Actually, we can reach no other conclusion than that the hearing held upon the order of the commission of September 2d was not a hearing as contemplated by the Constitution of New Mexico. It should be noted that even according to the

rule of the commission hereinabove set out, the same provides for a hearing. We have held, and rightly so, that a partial and incomplete hearing is not in compliance with the constitutional provision in In re Atchison, T. & S. F. Ry. Co.'s Protest of Rates, 1940, 44 N.M. 608, 107 P.2d 123, wherein there was a question of a recessed hearing. Certainly in the instant case it is doubtful if the term "hearing" in a legal sense was anything other than a mere discussion, and to use the term "hearing" for that which occurred would be a gross distortion of the English language. See 42 Am.Jur. 481, § 138, where it is stated:

"A requirement of a full hearing means one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice and law, of the steps asked to be taken."

 Therefore, we cannot but hold that the action of the commission in this instance was taken without any hearing whatsoever and in violation of the constitutional mandate. The commission had nothing before it upon which it could base an order of suspension and it follows that the order cannot be enforced. Seward v. Denver & R. G., supra; Woody v. Denver R. G. R. R. Co., 1913, 17 N.M. 686, 132 P. 250, 47 L.R.A.,N.S., 974; State Corp. Comm. v. Atchison, T. & S. F. Ry. Co., 1927, 32 N.M. 304, 255 P. 394; In re Atchison, T. & S. F. Ry. Co., 1933, 37 N.M. 194, 20 P.2d 918; In re Denver & R. G. W. R. Co., 1933, 37 N.M. 472, 24 P.2d 727.

This brings us to the questions raised by the respondent that, in effect, no hearing was necessary, this merely being an interlocutory order which had for its purpose a maintaining of the status quo during the period that the commission was investigating the question of the rates, that the rule of the commission was adopted to bring about a more orderly procedure for the hearing of rate cases, and that the suspension of the tariffs is the carrying out of commission's constitutional function.

It is on this basis that the respondent argues that the rule is for the protection not only of the utility but for the public and, having made provision for bond or other security, that the utility is in no wise injured and that the right of removal to this court is preserved and could be had upon the completion of a formal hearing. Respondent contends that the rule of suspension is a mere procedural one. Petitioner, however, seriously maintains that the rule amounts to a substantive change of the commission's constitutional power

and amounts to an attempted amendment of the constitution by rule, inasmuch as the constitution does not specifically give the commission the power to suspend.

■ We have examined the rule carefully and sympathize with the commission in its desire to simplify the procedure with reference to rate cases. However, no branch of the government can act unconstitutionally, and the error of the rule is, as stated in the rule itself, that before the entry of any order of suspension there must be a hearing as required by the constitution. Such a hearing must be full and complete, and if such a full and complete hearing is granted there would then be no apparent reason for providing for suspension because after such a hearing the commission would then be in a position to rule finally and conclusively as to the rates.

We said in In re Coal Rates in New Mexico, supra [23 N.M. 704, 171 P. 507]:

"Neither by the Constitution nor by statute is the commission given the power to suspend a proposed tariff * * *."

■ It would appear to the court that the provision of the rule allowing for suspension of rates relates to a substantive matter, not procedural, and is not one which the commission has the power to exercise under the provisions of our constitution, for even though the commission is a constitutional body, its powers are limited to those granted by the provisions of the constitution and they may not be enlarged except by vote of the people.

In the interest of shortening this opinion, the provisions of § 7 of Article 11 of the Constitution have not been set out, they having been quoted at length in numerous prior decisions. See particularly State Corporation Comm. v. Mountain States Tel. & Tel. Co., supra, for a comprehensive analysis of this section as it has been construed by prior decisions of this court.

■ Under our constitution as interpreted by our prior pronouncements, it would appear that certain basic authoritative rules have been established with reference to procedures of telephone regulation by the Corporation Commission. First and foremost, there is no question but that the commission has the power to initiate an investigation into the company's rate schedules, rate of earnings, investments and expenditures as a whole within the state. However, coincident with this power are the fundamentals of rate regulation that (1) the utility has a common-law right to fix its own rates and adopt such rate schedule as it believes just and reasonable and to place such schedule in effect; (2) the Corporation Commission

has the right, either on its own motion or otherwise, to determine the reasonableness of the rates charged, and if it finds the rates unreasonable, according to satisfactory and substantial evidence, to order the utility to change them; (3) the Commission is required to give notice and hold a full and complete public hearing with respect to the rates charged; (4) if the utility is dissatisfied with the commission's order, it may remove the case to the Supreme Court, and if the company refuses to abide by the commission's order, the commission must remove the same to the Supreme Court; (5) the Supreme Court must decide such removal cases on their merits and enforce the order if the same is lawful and reasonable and supported by substantial evidence, or refuse its enforcement if unlawful or unreasonable or not supported by substantial evidence.

With the aforementioned principia in mind and from what has been said heretofore, it is apparent that the suspension order of the Corporation Commission is invalid and the same will not be enforced by this court. And it is so ordered.

SADLER, McGHEE and COMPTON, JJ., concur.

LUJAN, C. J., not participating.