[No. 3199.   Feb. 28, 1927.]

STATE CORPORATION COMMISSION of NEW MEXICO v. ATCHISON, T. & S. F. RY. CO.

[255 Pac. 394.]

### SYLLABUS BY THE COURT

A station agency, not established by order of the State Corporation Commission, may be discontinued by a railroad company without permission of the commission; and an order of the commission that the agency be re-established is unenforceable, if based on the failure to obtain permission to discontinue it, and not upon a showing that the public interest reasonably and justly demands the service.

Appeal from Corporation Commission.

Proceeding by the State Corporation Commission against the Atchison, Topeka & Santa Fe Railway Company by citation to show cause why a station agency at Fulton was discontinued and why it should not be reinstated. From an order requiring the agency to be reinstated, defendant appeals. Reversed.

Reid, Hervey & Iden, of Albuquerque, for appellant.

R. C. Dow, Atty. Gen., for appellee.

### OPINION OF THE COURT

WATSON, J.  The Atchison, Topeka & Santa Fe Railway Company having withdrawn its station agent at Fulton (now June) without having obtained the consent of the State Corporation Commission, the latter cited the former "to show cause why the agency

---

[1] 33 Cyc p. 144 n. 39, 41.

at Fulton, N. M., was discontinued, and why such agency should not be reinstated.''

The company appeared by counsel and with wit-neses. Being directed to proceed, it took the position that it was merely present as a defendant, and that it was for the commision to make a case for reinstate-ment of the service. The commission ruling that the burden of proof was on the company, it made its showing as to the amount of its business at this sta-tion, its revenue therefrom, and the cost of maintain-ing an agent. The commission made practically no showing on its part. Following the hearing, an order was made in effect requiring the company to reinstate its agency until it should show sufficient cause ''to warrant the commission in closing the same.''

Without going into details as to the evidence, the order, or the findings, it may be said that it clearly appears from the proceedings, the order, and the ar-gument here that the only question involved was the right of the company to discontinue its agency serv-ice at Fulton without justifying such action to the commission and obtaining its order of approval. If the company has such right, the order is not lawful and is not to be enforced.

The power upon which the commission relies is given by the Constitution, art. 11, § 7:

''The commission shall have power and be charged with the duty of fixing, determining, supervising, regulating and controlling all charges and rates of railway, express, tele-graph, telephone, sleeping car, and other transportation and transmission companies and common carriers within the state; to require railway companies to provide and maintain adequate depots, stockpens, station buildings, agents, and facilities for the accomodation of passengers and for receiving and delivering freight and express; and to provide and maintain necessary crossings, culverts and sidings upon and alongside of their roadbeds, whenever in the judgment of the commission the public interests demand and as may be reasonable and just.''

No legislation affecting the present question has been brought to our attention.

The Attorney General relies upon the word "maintain," found in the above-quoted section. He argues that the duty of the commission is to require the company not only to provide proper facilities where the public interest demands, but to maintain those already provided. Otherwise, he argues, the company, having provided the facilities in accordance with the commission's order, might withdraw them the next day. Of course, such trifling would be intolerable. That question, we have no doubt, can be dealt with satisfactorily when it arises. In this case we are not considering contumacious conduct of a corporation. We are considering whether it may, in the usual course of its business, and where the commission has not taken jurisdiction of the particular matter, or taken action concerning it, proceed to withdraw facilities, which, in its judgment, are no longer reasonably or justly required.

Counsel for the company admit the power of the commission, after notice and hearing, to require of public utility companies such accomodations and facilities as are found to be reasonable and just, and to be demanded by public interest. But they deny the commission's power otherwise to interfere with corporate management in such matters. They place reliance upon St. L. & S. F. R. R. Co. v. Public Service Commission, 294 Mo. 364, 242 S. W. 938; Id., 301 Mo. 157, 256 S. W. 226. The Attorney General cites State v. Florida East Coast R. R. Co., 64 Fla. 112, 59 So. 385; Id., 58 Fla. 524, 50 So. 426. We think, however, that it is unnecessary to consider these interesting decisions, since the controlling principles have been already settled by this court.

The Constitution itself provides:

"The commission shall determine no question nor issue any order in relation to the matters specified in the preceding section, [Article XI, § 7], until after a public hearing held upon ten days' notice to the parties concerned, except in case of default after such notice." Article 11, § 8.

At such hearings the burden of proof is upon the commission, and it is the duty of the commission to

JANUARY TERM, 1927          307

State Corp. Com. v. A. T. & S. F. Ry. Co., 32 N. M. 304

present evidence as to all such facts as are necessary
to enable the court to determine the reasonableness
and justice of the order. Unless the record contains
. evidence satisfying this requirement, the order will
not be enforced. Seward v. D. & R. G. R. R. Co.,
17 N. M. 557, 131 P. 980, 46 L. R. A. (N. S.) 242;
Woody v. D. & R. G. R. R. Co., 17 N. M. 686, 132
P. 250, 47 L. R. A. (N. S.) 974; In re Coal Rates in
New Mexico, 23 N. M. 704, 171 P. 506. That the
hearing is had upon an order to show cause does not
cast the burden of proof upon the corporation. In
re Coal Rates in New Mexico, supra.

Such being the settled law, what is there in the na-
ture of this case to distinguish it? Only that the ques-
tion concerns reinstatement of a service formerly af-
forded, rather than an original demand for service.
That was, in fact, the situation in the Seward Case,
first above cited; but, in the earlier case, the discon-
tinuance occurred before the creation of the commis-
sion. The theory of the commision in this case is
that, since the discontinuance of the service has never
been authorized, there has been no legal discontinu-
ance; that in law the situation is as though the serv-
ice were still being given; that the question is, hence,
one of "maintaining" service; and that, where such
is the question, the burden of proof is necessarily on
the company.

Article 11, § 7, is the source of the commission's
power to require **maintenance,** as well as of its power
to require **provision,** of service.. The requirement of
notice and hearing found in article 11, § 8, is the same
as to both; that is to say, the commission cannot make
any order that a corporation "maintain" service un-
less it gives notice to the company and gives it a hear-
ing.

The word "maintain" in section 7, supra, occurs
merely in defining the jurisdiction of the commission.
It would be a violent assumption, particularly in view
of well-known conditions, to suppose that the Consti-
tution makers did not know that many and frequent

308    SUPREME COURT OF NEW MEXICO

State Corp. Com. v. A. T. & S. F. Ry. Co., 32 N. M. 304

changes would occur affecting the necessities and needs of railroads from an operating standpoint, and of the public from a service standpoint. There is nothing to indicate that every change in the service being afforded when the Constitution was adopted, or the service thereafter voluntarily installed, .was to have consideration and approval in advance by the commission. The contrary seems quite plain when we recall that every order in relation to such matters, however trivial, would involve notice and hearing.

Considering the constitutional provisions, we do not think that the commission was created to manage railroads. Its function is to protect the public interest against unjust and unreasonable deficiencies in service. To that end its limited administrative and judicial powers were conferred. It being claimed that railroad practice is unjustly or unreasonably injurious to public interest, or insufficient in point of service, a case arises for adjudication by the commission. The grounds of complaint must, however, be proven. Otherwise there is no basis for any action. This conclusion we think necessarily follows from the Constitution itself and from the former decisions of this court.

By nothing here said do we express any opinion. as to the effect of Laws 1925, c. 19, entitled "An act relative to hearings before the State Corporation Commission involving rates, fares and charges and fixing the burden of proof." The question is not considered, since no provision of that act is applicable to this case.

For the reasons stated, we must decline to give enforcement to the order of the commission in this case. It is so ordered.

PARKER C. J., and BICKLEY, J. concur.