[No. 3384.   April 11, 1929.]

DENTON BROS. et al. v. ATCHISON, T. & S. F. RY.
Co. et al.

[277 Pac. 34.]

W. C. Reid, of Albuquerque, J. M. Hervey, of Roswell, and E. C. Iden, of Albuquerque, for defendants.

## OPINION OF THE COURT

WATSON, J.   The railroad company has removed to this court an order of the State Corporation Commission, requiring the company, "on or before the 17th day of September, 1928, to reopen the agency at Kenna, New

Mexico, and maintain said agency in future, until further order of this Commission." There were no arguments or briefs before the commission. The matter is here submitted on the railroad's brief alone.

In its opinion and order, the State Corporation Commission, after summarizing the evidence adduced at the hearing, makes the following findings:

"1. That the agency at Kenna was improperly discontinued without notice to the patrons of the road.

"2. That the agency at Kenna was improperly discontinued by the said defendant company without notice to, or permisson of, this Commission.

"3. That the total revenues of the station at Kenna did not justify the discontinuance of the agency at that point, and that said agency was therefore improperly and illegally discontinued.

"4. That the revenues received by the said company and the convenience of the public require the reopening and maintenance of an agency at Kenna within thirty (30) days from the date of this order."

This court has, on previous occasions, reviewed orders of the State Corporation Commission with reference to the maintenance of local agencies. Seward v. Denver & R. G. R. Co., 17 N. M. 557, 131 P. 980, 46 L. R. A. (N. S.) 242; Woody v. Denver & R. G. R. Co., 17 N. M. 686, 132 P. 250, 47 L. R. A. (N. S.) 974; State Corporation Commission v. Atchison, T. & S. F. R. Co., 32 N. M. 304, 255 P. 394. In those decisions, and particularly in the Seward Case, careful consideration was given to the principles which control the present case.

The commission's findings, Nos. 1, 2, and 3, may be dismissed with the observation that they do not tend, in any respect, to support the order made. State Corporation Commission v. Atchison, T. & S. F. R. Co., supra. The only question before us is that presented by finding 4, and that is whether, under the conditions shown to exist, the commission's order is reasonable and just, considering the interest and rights, both of the public and of the railroad.

From an operating standpoint it is not claimed that an agent is needed at Kenna. The public safety is not involved. It is a matter of public convenience only.

So due regard must be had of the cost of the service required. Seward v. Denver & R. G. R. R. Co., supra. We may further narrow the point by saying that it is not claimed that passenger service is inadequate. The inconvenience shown is in respect to freight traffic only. Is that inconvenience of such proportion as to justify imposing upon the company the additional expense of maintaining an agent? The commission estimates that it would cost $200 per month.

The immediate population of Kenna is not shown. It has considerably decreased in recent years. Its importance as a business or trading point has diminished. Its rather large trade territory is principally stock-raising, with some dry farming, served by two mercantile establishments, a post office, and a school. The school has 75 pupils, some of whom, at least, are gathered by two school busses. Its post office serves 250 patrons.

Prepaid freight is delivered at Kenna without delay. If less than a carload, it is placed in the depot, under lock, and may be removed by the consignee by applying to an employee of the company who operates the coal chute at the station, and who holds the key. Before this custom was instituted, there had been occasional damage to package goods left unhoused. Under the present system, there is no occasion for such losses. One occurrence of the spoiling of meat was attributed to inability to find the man with the key. It appears, however, that the packing house did not enforce payment for the meat. So the merchant did not suffer the loss, and it may be doubted whether the delay at Kenna was solely responsible for it. We think it appears that the key is reasonably accessible.

If freight, destined for Kenna, is not prepaid, it is stopped at Elida, 10 miles distant, pending payment. If a carload, it is forwarded to Kenna, without additional charge, as soon as the freight has been paid. If less than a carload, the consignee may either haul it himself to Kenna, or by prepaying the local rate, have it forwarded there.

Package shipments from Kenna require the shipper to be on hand at the somewhat uncertain times of train ar-

rivals. Occasionally a conductor, in his haste or impatience, has refused to receive such freight, disclaiming knowledge of the rate to be charged. Ordinarily conductors have been accommodating and helpful. Witnesses testified that it is inconvenient not to be able to inquire of a local agent as to the probable time of arrival of freight trains and as to freight rates. The inconvenience is minimized, however, by the fact that a railroad telephone is maintained,. enabling interested persons, without charge, to communicate regarding rates and train arrivals, with the agent at Elida, or with the dispatcher.

Carload shipments from Kenna are almost exclusively live stock. Cars may be ordered by phoning the Elida agent. When loading is completed, the data may be phoned to the Elida agent, who will have the billing ready when the train arrives there. This occasions no delay. In obtaining cars, and loading them, the coal chute operator is accommodating and helpful. Most, if not all, of the witnesses testifying as to such shipments admitted that no great inconvenience resulted from the absence of an agent. Cattle shipments are more or less periodic, or, at least, occasional. It would manifestly be uneconomic to require so large a continuous expense to overcome such slight and occasional inconvenience. A large part of the complaint of the stockmen who testified had to do with the lack of commercial telegraph and other collateral service which the railroad company could not be required to maintain. Woody v. R. Co., supra.

It seems that the only considerable inconvenience is that suffered by the two merchants whose business is of a nature requiring frequent freight service.. They no doubt do business under some disadvantages. In so far as that inconvenience affects them personally, it is doubtful if it should be deemed public inconvenience. Seward v. R. Co., supra. In so far as it affects the cost of doing business, and thus adds to the price of merchandise, it perhaps should be. As to that matter there is no evidence. We think we must here proceed upon the assumption that the persons considerably inconvenienced are few. This is "an important factor in determining what is to be done." Seward v. R. Co., supra.

The commission was of opinion that the freight revenue of $20,000, attributable to this station, plus revenues which would be derived from express and telegraph business and from an anticipated increase of business, warranted its order. That might be true, if a strong case of public inconvenience had been made. But, as we think, little of the inconvenience is attributable to the carload business; the revenues from which—taking 1927—amounted to slightly less than $19,000. The principal need of an agent is occasioned by less than carload business, the revenues from which but slightly exceeded $1,300. So, without laying it down as a formula for use in any other case, we think we should here consider the reasonableness of the order with a view to the fact that it requires an additional expense of $2,400, the principal purpose of which is to improve service in a business whose revenues amount to $1,300.

It is perfectly natural that every community should aspire to the best railroad service to be had. We have full sympathy with such aspirations. Yet it is to be remembered that, under our system of public control of rates and service, the general public, speaking broadly, loses in cost what it gains in service. So the railroad, in resisting demands for any uneconomic service, really represents the true interest of the general public.

Upon the facts before us we cannot believe that an agent at Kenna would earn for the company any considerable part of his pay. Nor do we believe that he would save to the local public nearly as much as the service would cost the company and, ultimately, the general public. The company is asked to perform services which the interested parties can perform for themselves much more cheaply. Compliance with the order would result in economic waste. This will always, in cases of this kind, be an important factor in the problem, and, in the present case, we consider it the most important.

On the whole, we are convinced that the commission's order is unreasonable. The present service is complete. It does not fail entirely at any point. It is good as compared with the service enjoyed by some communities, and poor as compared with communities more favorably situ-

ated. The proposed annual expenditure of $2,400 would, in our judgment, be largely a loss to the company, and the gain to the community would not be comparable.

We are here considering only the reasonableness of the present requirement. It does not follow that the conditions existing might not warrant less expensive requirements having a comparable value to the community.

We must, therefore, decline enforcement of the present order. The matter will be remanded to the State Corporation Commission for such further proceedings, if any, as conditions may seem to require.

It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.