16 P.(2d) 402

**In re SOUTHERN PAC. CO. et al.**
No. 3801.

Supreme Court of New Mexico.
Nov. 19, 1932.

Del W. Harrington, of El Paso, Tex., and E. R. Wright and Donovan N. Hoover, both of Santa Fé, for appellant.

F. S. Merriau, of Raton, for protestants.

HUDSPETH, J.

The Southern Pacific Company made application to the State Corporation Commission to discontinue the agency at Taylor, and, after hearing, the application was denied. The railroad company has removed the order denying the application to this court.

Taylor is an agency station on the Dawson branch between Tucumcari, N. M., and Dawson, N. M., 23½ miles west of Mills and 11½ miles east of French, the junction point with the Atchison, Topeka & Santa Fé Railway. This railroad is operated by the Southern Pacific Company as a common carrier in intrastate and interstate commerce. It was built primarily for the purpose of serving the mines at Dawson, which supplied the mines and smelters of Arizona with coal and coke for a number of years. Later, oil was substituted as fuel in the smelters and other plants, and now natural gas is very generally used throughout the trade territory of the Dawson mines. As a consequence, the amount of Dawson products now marketed is negligible compared with the output during flush times. When the traffic was heavy, the agency at Taylor was essential for safe operation of trains, but it is conceded by protestants that there is here no question involved relative to the need of an agent from the operating standpoint or for the safety of the public.

The population of Taylor is less than 40, with one merchant, who gets nearly all his merchandise, except coal, by truck. He has shipped from Raton on the Atchison, Topeka & Santa Fé Railway 14 to 16 cars of coal each year. The railroad business at Taylor has steadily declined.

The less than carload business forwarded from Taylor for the period beginning April, 1930, to March, 1931, amounted to 10 tons, and produced a revenue of $114. The carload business forwarded during this period amounted to 33 carloads, mainly livestock, and produced a revenue of $1,546. Fifty carloads were received during this period. The total revenue was $5,237. The total less than carload business received during this period was 18 tons, and the revenue amounted to $251. The revenue from the sale of tickets during this period amounted to $90. The cost of the operation of the agency during this period was $1,813.

The less than carload business forwarded from Taylor for the six months' period from April, 1931, to and including September, 1931, amounted to only $6. The carload business produced a total revenue of $427. There was received seven carloads of freight with a total revenue of $265, and there was received at Taylor during this period less than carload tonnage producing a revenue of $112. The total revenue of all freight forwarded and received at Taylor for this period amounted to $804. Ticket sales during this period amounted to $55. There was a little additional revenue derived from the telegraph and express

business. The cost of operating the agency during this period was $908.

Protestants maintain that the order of the State Corporation Commission denying the application of the railroad company to close this station is not appealable, first, because the order is purely negative in character; and, second, because under S. L. 1929, c. 26, § 1, Comp. St. 1929, § 116-1101, the power to authorize the closing of railroad agencies is vested entirely in the State Corporation Commission. Comp. St. 1929, § 116-1101, provides as follows: "That hereafter no railway, transportation or transmission company shall discontinue any railway station, agency or agent at any railway station in this state without first submitting to the state corporation commission a petition alleging that such station or agency or agent is no longer a necessary facility for the accommodation of passengers, and for receiving freight and express, and constitutes an unnecessary burden and expense upon such railway, transportation or transmission company, and praying for an order of the state corporation commission permitting the discontinuance of said station, agency or agent. That such station, agency or agent shall not be discontinued until a hearing shall be held by the state corporation commission and an order of said commission entered authorizing the discontinuance of such station, agency or agent."

The penalty (section 116-1103) is as follows: "That any railway, transportation or transmission company violating provisions of this act shall be guilty of a misdemeanor and shall be fined in a sum of not to exceed $1,-000.00 and not less than $500.00. (L. '29, ch. 26, § 3.)"

It is true that this act has no provision for an appeal. In fact, it provides a penalty which, if lawful, would relieve the Corporation Commission in such cases of the necessity of appealing to the Supreme Court for the enforcement of its orders. The railway company relies upon article 11, § 7, of the Constitution of this state, which reads as follows:

"The commission shall have power and be charged with the duty of fixing, determining, supervising, regulating and controlling all charges and rates of railway, express, telegraph, telephone, sleeping-car, and other transportation and transmission companies and common carriers within the state; to require railway companies to provide and maintain adequate depots, stock-pens, station buildings, agents and facilities for the accommodation of passengers and for receiving and delivering freight and express; and to provide and maintain necessary crossings, culverts and sidings upon and alongside of their roadbeds, whenever in the judgment of the commission the public interests demand, and as may be reasonable and just. The commission shall also have power and be charged with the duty to make and enforce reasonable and just rules requiring the supplying of cars and equipment for the use of shippers and passengers, and to require all intrastate railways, transportation companies or common carriers, to provide such reasonable safety

appliances in connection with all equipment, as may be necessary and proper for the safety of its employees and the public, and as are now or may be required by the federal laws, rules and regulations governing interstate commerce. The commission shall have power to change or alter such rates, to change, alter or amend its orders, rules, regulations or determinations, and to enforce the same in the manner prescribed herein; provided, that in the matter of fixing rates of telephone and telegraph companies, due consideration shall be given to the earnings, investment and expenditure as a whole within the state. The commission shall have power to subpœna witnesses and enforce their attendance before the commission, through any district court or the supreme court of the state, and through such court to punish for contempt; and it shall have power, upon a hearing, to determine and decide any question given to it herein, and in case of failure or refusal of any person, company or corporation to comply with any order within the time limit therein, unless an order of removal shall have been taken from such order by the company or corporation to the supreme court of this state, it shall immediately become the duty of the commission to remove such order, with the evidence adduced upon the hearing, with the documents in the case to the supreme court of this state. Any company, corporation or common carrier which does not comply with the order of the commission within the time limited therefor, may file with the commission a petition to remove such cause to the supreme court, and in the event of such removal by the company, corporation or common carrier, or other party to such hearing, the supreme court may, upon application in its discretion, or of its own motion, require or authorize additional evidence to be taken in such cause; but in the event of removal by the commission, upon failure of the company, corporation or common carrier, no additional evidence shall be allowed. The supreme court for the consideration of such causes arising hereunder, shall be in session at all times, and shall give precedence to such causes. Any party to such hearing before the commission shall have the same right to remove the order entered therein to the supreme court of the state, as given under the provisions hereof to the company or corporation against which such order is directed.

"In addition to the other powers vested in the supreme court by this constitution and the laws of the state, the said court shall have the power and it shall be its duty to decide such cases on their merits, and carry into effect its judgments, orders and decrees made in such cases, by fine, forfeiture, mandamus, injunction and contempt or other appropriate proceedings."

This court had under consideration article 11, § 7, of the Constitution, in Seward v. Denver & R. G. R. Co., 17 N. M. 557, 131 P. 980, 986, 46 L. R. A. (N. S.) 242. A majority of the court, including Mr. Chief Justice Roberts, who wrote the opinion, had been members of the convention which framed the Constitution. That decision has been followed in all agency cases. There the court said:

"The Constitutional Convention of New Mexico, when it adopted article 11 of the Constitution, and provided for the somewhat novel procedure, after the hearing and determination by the Commission for the judicial review of the action of the Commission, was attempting to expedite the judicial inquiry into the reasonableness and lawfulness of the order made by the Commission; provide a method of procedure that would be inexpensive and simple, and that would preserve the rights of the people on the one hand, and of the owners of the public service corporations on the other. * * * It was the evident intent of the framers of the instrument that all the known evidence should be produced before the Commission in the first instance. After the Commission has made its final order, the public service company has 20 days within which to voluntarily comply with the order. If it does so comply, and the order is satisfactory to the complaining party, no further proceedings are required. Should it fail to comply, unless an order of removal is taken from such determination by the Commission, by the company affected, the Commission must remove such cause, together with all the evidence adduced upon the hearing, with the documents, etc., to the Supreme Court. * * * While it is proper for the Commission to make findings of fact, still such findings can have no force or effect in this court. Our Constitution does not require this court to consider or give any effect to such findings, but enjoins that this court shall 'decide such cases on their merits.' It does not even, as is usually the case, make the order of the Commission prima facie just and reasonable, but, on the other hand, requires this court to pass upon the merits of the case, without indulging in any presumptions. This being true, it is our duty to take the order made by the Commission and test its reasonableness and lawfulness by the evidence adduced upon the hearing."

This section was again under consideration in the case of State Corp. Comm. v. Atchison, T. & S. F. Ry. Co., 32 N. M. 304, 255 P. 394, 395, where this court said:

"The word 'maintain' in section 7, supra, occurs merely in defining the jurisdiction of the commission. It would be a violent assumption, particularly in view of well-known conditions, to suppose that the Constitution makers did not know that many and frequent changes would occur affecting the necessities and needs of railroads from an operating standpoint, and of the public from a service standpoint. There is nothing to indicate that every change in the service being afforded when the Constitution was adopted, or the service thereafter voluntarily installed, was to have consideration and approval in advance by the commission. The contrary seems quite plain when we recall that every order in relation to such matters, however trivial, would involve notice and hearing.

"Considering the constitutional provisions, we do not think that the commission was created to manage railroads. Its function is to protect the public interest against unjust and unreasonable deficiencies in service. To that end its limited administrative and judicial

powers were conferred. It being claimed that railroad practice is unjustly or unreasonably injurious to public interest, or insufficient in point of service, a case arises for adjudication by the commission. The grounds of complaint must, however, be proven. Otherwise there is no basis for any action. This conclusion we think necessarily follows from the Constitution itself and from the former decisions of this court."

■ It is a familiar doctrine that only when a statute is clearly violative of the Constitution, it is so held by the courts, but there seems to be an irreconcilable conflict between the statute quoted above and the Constitution.

■■ That the Legislature is without jurisdiction to deprive any interested litigant of the right guaranteed by the Constitution to have the order of the Corporation Commission reviewed by the Supreme Court seems too clear for argument; and it is equally clear that the provision, referred to as significant in Santa Fé Gold & C. M. Co. v. A., T. & S. F. Ry. Co., 21 N. M. 496, 155 P. 1093, 1094, that "the said court shall have the power and it shall be its duty to decide such cases on their merits, and carry into effect its judgments, orders and decrees made in such cases, by fine, forfeiture, mandamus, injunction and contempt or other appropriate proceedings," covers the field and is self-executing. Delgado ex rel. v. Romero, 17 N. M. 81, 124 P. 649, Ann. Cas. 1914C, 1114. The language is addressed to the court. It is definitive legislation complete in itself. The object is un-

mistakable. It not only defines the method of the enforcement of orders of this class, but it gives to the Supreme Court exclusive jurisdiction of the matter.

■ Is there no right of review because the order is negative in form? The effect of the determination of the Corporation Commission is to cause the further maintenance of the agency at Taylor, a rule of conduct upon the railway company. The management of the railroad had decided that this agency was unnecessary for the accommodation of the public, and that its further maintenance would be inconsistent with the efficient and economical operation of the railroad. The petitioner is entitled to have the question decided by this court. By closing the agency at Taylor, it could have compelled the commission to remove the order to this court, the only tribunal with power to enforce it, but, instead of pursuing this course and flaunting the authority of the Corporation Commission, which was acting in conformity with the act of the Legislature, the railroad company pursued a course more in keeping with the respect due to the constitutional tribunal of the state, and asked for an order of removal to this court to the end that the lawfulness and reasonableness of the order might be determined.

Protestants rely upon Seaberg v. Raton Public Service Co., 36 N. M. 59, 8 P.(2d) 100. This case is quite different. In the Seaberg Case there was an application to the constituted tribunal for relief, legislative in its nature. It is not a judicial function to pre-

scribe reasonable rates, and, when the tribunal possessing the power to grant this legislative relief has refused to grant it, it is beyond the power of this court, whose functions are only judicial, to review that action.

As said in the case of Seward v. Denver & R. G. R. Co., supra, this court is enjoined by the Constitution in these matters to disregard technicalities. A fair and reasonable interpretation of the provision as to removal is to be favored so as to accomplish the purposes for which it was adopted. We hold that the appellant had a right to remove this case to this court.

The question to be determined on the merits is "whether, under the condition shown to exist, the commission's order is reasonable and just, considering the interest and rights, both of the public and of the railroad." Denton Bros. et al. v. A., T. & S. F. Ry. Co. et al., 34 N. M. 53, 277 P. 34, 35; Seward v. Denver & R. G. R. Co., supra; Randall et al. v. A., T. & S. F. Ry. Co., 34 N. M. 391, 281 P. 479; San Juan Coal & Coke Co. v. Santa Fé, S. J. & N. R. Co., 35 N. M. 336, 298 P. 663; In re Denver & R. G. W. R. Co., 36 N. M. 106, 9 P.(2d) 139, 140.

The late Mr. Justice Parker, speaking for the court in Re Denver & R. G. W. R. Co., supra, said: "In approaching the subject, it is to be remembered that the rights of the applicant and the rights of the public are both involved and are to be considered. Randall et al. v. A., T. & S. F. Ry. Co., 34 N. M. 391, 281 P. 479. It appears from all of the testimony taken before the State Corporation Commission that all carload business can without inconvenience of any considerable amount be handled without a station agent. It is only the less than carload business that requires a station agent, so that shipments of goods could be made to or from the station without prepaying the freight."

In the case of Denton Bros. et al. v. A., T. & S. F. R. Co. et al., supra, the facts and surrounding circumstances were similar to those in the case at bar, except that the revenues of the agency in this case are much less. The decision in the Denton Bros. Case controls the case at bar, and it will not be necessary to comment upon the points decided in that case. However, protestants take exception to the statement therein that "the railroad, in resisting demands for any uneconomic service, really represents the true interest of the general public." This language was used in the following paragraph: "It is perfectly natural that every community should aspire to the best railroad service to be had. We have full sympathy with such aspirations. Yet it is to be remembered that, under our system of public control of rates and service, the general public, speaking broadly, loses in cost what it gains in service. So the railroad, in resisting demands for any uneconomic service, really represents the true interest of the general public."

This is no new theory. Mr. Chief Justice Roberts, in Seward et al. v. Denver & R. G. R. Co., supra, quoted with approval an expression of the Supreme Court of Oklahoma in Chicago, R. I. & P. R. Co. v. State et al.,

24 Okl. 370, 103 P. 617, 24 L. R. A. (N. S.) 393, as follows: "Where the receipts of such stations will not justify the installation of such service, there being eliminated the question of the safety or expedition in the operation of trains, it would be unreasonable to require such service to be installed, creating a deficit at such station to be borne by the receipts at a larger station, except in exceptional instances. The patrons of a large station, after the expenditures, for the reasonable maintenance of the station, and the proper contribution towards maintenance, equipment and operation of the line, and the paying of a reasonable dividend on the investment, are entitled, if it be reasonably practicable to a reduction in rates; and except as stated it is unreasonable and unjust to require the large stations to * * * pay deficits at small stations."

The farmers and stockmen are complaining of the freight rates on their products. These patrons of the railroad should not be required to contribute from their meager earnings toward the maintenance of unnecessary agencies or other uneconomic service. Protestants suggest that a different viewpoint is the correct one at this time by reason of the industrial depression through which the country is now passing. We fully realize the seriousness of any step which adds to the army of unemployed, but we are unable on any tenable theory to justify a course by which the Corporation Commission or this court could require railroads to carry on their pay rolls unnecessary employees. The federal statutes require the interstate carriers to operate their railroads efficiently and economically. If another economic theory or policy is to be adopted with the view of increasing the number of men employed in the transportation business, it is not the province of the Corporation Commission or this court to initiate it.

The cause will be remanded to the Corporation Commission, with directions to grant the application of the railway company for the discontinuance of the agency at Taylor, and like disposition will be made of the applications of the telegraph and express companies. It is so ordered.

BICKLEY, C. J., and WATSON and SADLER, JJ., concur.

NEAL, J., did not participate.