206 P.2d 259

**VILLAGE AND CITIZENS OF GRENVILLE v. STATE CORPORATION COMMISSION et al.**

No. 5162.

Supreme Court of New Mexico.

May 9, 1949.

Krehbiel & Stevens, of Clayton, for movants.

E. R. Wright, of Santa Fe, and J. C. Street, and J. L. Rice, both of Denver, Colo., for respondent Colorado & Southern Ry. Co.

A. K. Montgomery, of Santa Fe, for respondent, Railway Express Agency, Inc.

BRICE, Chief Justice.

Upon the entry of an order by the New Mexico State Corporation Commission (hereinafter called Commission), which authorized the respondents to close the railway and express station at the village of Grenville, in Union County, New Mexico, the cause was removed to this court.

In 1941 we determined that the respondents need not employ a regular agent to operate the station at the village of Grenville, provided they would employ a caretaker who would perform the services for the public which were specifically set out in our order; for the details of which reference is made to our opinion in that case. This arrangement was proposed by respondents, and acquiesced in by this court. Petition of Town of Grenville (Petition of Colorado & Southern Railway Company), 46 N.M. 3, 119 P.2d 632, hereafter referred to as "The Grenville Case." Now it is proposed to close the station for all purposes.

The village of Grenville filed an application to require the respondents to comply with the order of this court as entered in the Grenville case, which it is alleged has been violated; and respondents petition for permission to dispense with the caretaker and to close the station.

The case was heard by the Commission and findings of fact and conclusions of law were made and entered, followed by an order authorizing respondents to close the Grenville Station. After this decision of the Commission the cause has been removed to this court for trial de novo as provided by Sec. 7 of Art. 11 of this state's Constitution.

The respondents would not object to continuing the services we required of them in the Grenville case, except for a controversy resulting from a contract with the order of railroad telegraphers, which as interpreted by the National Railroad Adjustment Board, requires the services of an agent-telegrapher at this station if the services which we required to be performed by a caretaker are continued.

The decision in the Grenville case was made November 21, 1941. No seri-

ous objection was made to the order until September 23, 1947, on which date the order of Railroad Telegraphers (hereafter referred to as the O. R. T.) filed a complaint with the National Railroad Adjustment Board, a tribunal established by the Congress, Title 45 U.S.C.A. § 153, for settling controversies between carriers and their employees. We need not go into the jurisdiction of this board. It is sufficient to say that their determination of a question involving contractual relations between carriers and their employees (in this case the O. R. T.) is binding on both parties. The contention of the O. R. T. before the Adjustment Board was that under the contract between it and the respondents, the latter were not permitted to use a mere caretaker to do the work of an agent-telegrapher, and that such was the work provided for in our order in the Grenville case. The Adjustment Board after a hearing rendered a decision in which it held that the work we permitted to be done by a caretaker at Grenville was the work of a station agent under the contract mentioned and therefore the respondents had violated their union labor contract. As a result of this decision the respondents must either close the station altogether or place there a regular agent-telegrapher to perform the work, unless our order can be modified so that a caretaker's services can be beneficially used. The present cost of a caretaker is $360 a year, whereas the expense of furnishing an agent-telegrapher will be approximately $3600.

The question is whether it is reasonable and lawful to require the respondents to continue the employment of a caretaker because of the effect of the Adjustment Board's decision. Seward v. Denver & R. G. R. Co., 17 N.M. 557, 131 P. 980, 46 L. R.A.,N.S., 242.

Caretakers have been approved as sufficient in similar cases, Kurn v. State, 179 Okl. 440, 66 P.2d 52; Thompson v. Nebraska State Railroad Comm., 142 Neb. 477, 6 N.W.2d 607; In re Application of the Union Pac. R. Co., 64 Idaho 529, 134 P.2d 599; Illinois Central R. Co. v. Illinois Commerce Comm., 375 Ill. 585, 32 N.E.2d 146; and we would have no difficulty in approving our conclusion in the Grenville case if a new question had not arisen since the entry of the original order.

The respondents and this court were of the opinion that our order in the Grenville case was just and reasonable; that the citizens of Grenville and the adjacent territory were entitled to the services provided for therein. Now we must weigh the inconvenience that the new conditions will entail to the public as against the increased cost of operating the station by respondents, and endeavor to arrive at a just decision.

■ The fact that the station may be operated at a loss is a principal factor, but not the only one, that must be taken into

consideration in making our decision. The inconvenience to the public is just as important, and in some cases more important than the loss factor, if the carrier's general business is not unreasonably affected. In so large a business ordinarily some stations, or operations, will not produce a profit; but convenience of the public may outweigh the loss factor. Village of Millersburg v. Public Utilities Comm., 137 Ohio St. 75, 27 N.E.2d 1020; Atlantic Coast Line R. Co. v. North Carolina Corporation Comm., 206 U. S. 1, 27 S.Ct. 585, 51 L.Ed. 933, 11 Ann.Cas. 398. We stated in the Seward case, supra [17 N.M. 557, 131 P. 993]:

"The Constitution does not confer upon the Corporation Commission the right to arbitrarily establish a station or to require a station agent regardless of the expense entailed upon the company, or the benefit to be derived by the public. It is only authorized to make such an order in this regard, as 'the public interests demand, and as may be reasonable and just.' It is not to consider alone the interests of the public affected, by the order, but must determine whether or not, taking into consideration both the interests of the public and the expense entailed upon the railroad company, the order is just and reasonable. * * *"

 The carload shipments to and from Grenville averaged annually 319 from January 1, 1942, to and including 11 months of 1947, approximately six years. If we exclude the 104 carloads of road construction material shipped in the year of 1945 (which were unusual shipments), the average would be about 301 carloads per annum. Of these all but about two percent of the total were livestock shipments. The total freight on carload lots was $10,300 average per annum. Excluding the unusual shipment of road materials which probably will not occur against for many years, the carload shipments averaged 301 per annum, of which ninety-eight percent was livestock. Calculating the freight at the average of $32.20 per car, the revenue from carload lots, except that of 1945 for road material, amounted to $9,632, of which $9440 was for livestock and $192 for other freight. The freight on milk and cream shipments averaged $547.29 per annum, and all other less than carload lots averaged $134 per annum. The average passenger fares were $65.56 per annum. The average express receipts were $432.96 per annum. The freight on the road material, spread over the six years, would average $558 per annum, assuming that the freight on carload shipments averaged the same amount per carload.

The revenue received by respondents from all freight and express to and from Grenville may be itemized approximately as follows:

| | | |
|---|---|---|
| Livestock carload lots | | $9,440.00 |
| Other " " | | 192.00 |
| Road materials " " | | 558.00 |

Milk and cream shipments     $ 547.00
Other less than carload lots     134.00

1/2 accredited to    2    10,871.00

Grenville     $5,435.50
(See Seward v. Ry., supra)
To this should be added passenger fares which averaged per annum     65.50

    $5501.00

Add express revenue accredited to Grenville     216.48

Total income accredited to Grenville     $5717.48

The above figures are only approximately correct. The evidence as given by respondents shows that the revenue from freight accredited to Grenville is $5489.93 and express $216.48, a total of $5706.41.

We do not see any particular difficulty in handling the carload lots which consist almost entirely of livestock, as the billings on forwarded shipments have been done at Mount Dora, eight miles away, since 1941 with no great inconvenience to shippers. It necessitates two trips to that station but this is not too burdensome, as we held in the case of Denton Bros. v. Atchison, T. & S. F. Ry. Co., 34 N.M. 53, 277 P. 34. It appears that the business establishments at Grenville consist of two filling stations, a bar, a hotel with a cafe, a combined drug and grocery store with a filling station, and three other grocery stores. These establishments necessarily require considerable transportation, but they are not to any considerable extent patrons of the railroad. Merchandise is transported to them almost entirely by truck. The merchants of Grenville and others, ship in and out less than six carload lots of merchandise per annum. This consists of coal, feed, salt and gasoline. The less than carload freight shipped to and from Grenville creditable to it pays an average of $65.50 revenue per annum, excluding milk and cream. The passenger travel is almost entirely by bus, as is indicated by passenger fares paid of an average of $65.56 per annum. There are several truck lines available and the Greyhound Passenger Bus Line with four busses daily for travel accommodation, stop at Grenville, as well as daily train service by respondent railway.

A first class paved highway extending from Fort Worth, Texas to Denver, Colorado, passes through Grenville, with connections that extend over the United States.

The respondent railroad agrees to continue daily passenger service at Grenville; to deliver incoming freight less than carload lots to its station freight room which will be left unlocked for consignees to get their freight; to receive all consignments of milk and cream if placed on a truck to

be kept for that purpose at the station by respondent; to deliver or forward all carload shipments of freight as provided by our previous order, without the services of an agent at Grenville.

The principal objection made to this arrangement, and the most difficult one, is regarding the shipment of milk and cream from Grenville to creameries located at distant points, principally to Trinidad, Colorado. It is contended that cans of milk and cream will freeze in the winter and sour in the summer, if left out of the freight house on a truck; that without a custodian to lock the freight room shipments of freight may be stolen.

According to our previous decisions it would be unreasonable and unjust to require the respondent to place an agent-telegrapher in charge at Grenville, Seward v. Denver & R. G. R. Co., supra; Denton Bros. v. Atchison, T. & S. F. R. Co., supra; Randall v. Atchison T. & S. F. R. Co., 34 N.M. 391, 281 P. 479; San Juan Coal & Coke Co. v. Santa Fe, S. J. & N. R. R., 35 N.M. 336, 298 P. 663; In re Southern Pacific Co., 37 N.M. 11, 16 P.2d 402, and this would be the effect of continuing the present service.

We have concluded that the business is sufficient, and that it is reasonable and just to require that a custodian be kept at the station at Grenville to perform the services heretofore required, except such as are classed as agent-telegrapher work under the contract between the respondents and the O. R. T., as construed by the National Railroad Adjustment Board.

An order may be prepared as provided herein, in which the duties of the custodian will be specifically stated. The order of the State Corporation Commission in this proceeding, permitting respondents to dispense with a custodian at Grenville is set aside, and it is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.