656 P.2d 868

**In the Matter of the ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY Seeking Permission to Close the Agency Station at Melrose, New Mexico.**

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant,

v.

CORPORATION COMMISSION, Appellee,

and

Melrose Grain and Elevator, Inc., Protestant-Intervenor.

No. 14112.

Supreme Court of New Mexico.

Dec. 6, 1982.

Rehearing Denied Jan. 7, 1983.

Johnson & Lanphere, Nicholas R. Gentry, Albuquerque, for appellant.

Jeff Bingaman, Atty. Gen., Dave Romero, Jr., Wayne Shirley, Asst. Attys. Gen., Santa Fe, for appellee.

Morris Stagner, Clovis, for protestant-intervenor.

## OPINION

SOSA, Senior Justice.

This action arises from the New Mexico State Corporation Commission's (Commission) order denying the Atchison, Topeka and Santa Fe Railway Company's (ATSF) petition to close its agency station located at Melrose, New Mexico. We hold that the Commission's order was reasonable and just and will be enforced.

Following the filing of a petition by ATSF seeking permission to close and discontinue service through its agency station in Melrose, the Commission held a public hearing on July 28, 1981. At that hearing, the protestant, Melrose Grain & Elevator Co., Inc. (Melrose Grain), the only formal intervenor in this case, opposed the closing of the agency station. The United Transportation Union, the Brotherhood of Railway and Airline Clerks and several residents of Melrose and the surrounding area also opposed the closing. Subsequently, the Commission entered its Decision Order No. 3615(a) which required "[t]hat the Atchison, Topeka and Santa Fe Railway Company remain open and maintain in operation the said Station of Melrose, New Mexico" and "[t]hat all duties, services, etc., be performed at Melrose, New Mexico, and not be removed, cancelled or nullified, nor be performed elsewhere." Upon the petition of ATSF, the Commission removed the matter to this Court pursuant to Article XI, Section 7 of the New Mexico Constitution.

The town of Melrose is located approximately 24 miles west of Clovis, New Mexico, on Highway 60. The ATSF agency station at Melrose is currently open and staffed by one ATSF agent who is on duty 40 hours per week. ATSF proposes to close the Melrose agency station and handle all the Melrose agent's duties through its Clovis office. The station at Clovis is staffed with between 30 and 35 employees. It is open 24 hours a day, seven days a week, and is in contact with ATSF's system-wide computer facility headquartered in Kansas City, Missouri. The Clovis station handles record keeping for the Melrose station. Customers in Melrose who wish to order cars, release loaded cars, or obtain information on shipping rates and schedules or on demurrage and freight charges may choose either to call Clovis toll free or to deal with the agent in Melrose. The Melrose agent must call Clovis to relay the information for handling by the computer or by Clovis facilities.

The two major customers of ATSF at Melrose are Melrose Grain and the Farmers Cooperative Elevator. ATSF enjoys annual revenue of approximately $870,000 per year which is generated at the Melrose agency station and which ATSF attributes half to Melrose and half to the point of destination. In 1980, this revenue represented traffic of 587 cars that originated at the Melrose agency station. Protestant, Melrose Grain, is responsible for 60% to 70% of this business. Farmers Cooperative Elevator gener-

ates the remaining 30% to 40% of business. In addition, an average of 31 trains that originate elsewhere pass through the Melrose agency station daily.

The annual cost to maintain the Melrose agency station has been approximately $26,000. The estimated costs for 1981 were approximately $32,000. The closing of the Melrose agency station would have a negligible effect on ATSF's cost of doing business. ATSF will not save the salary of the Melrose agent should the station be closed because the agent has seniority and may choose to transfer to Clovis or elsewhere.

Melrose Grain does its banking in Melrose. Once a car is loaded, protestant merely has to have the Melrose station agent sign the bill of lading. A signed bill of lading can be presented to the bank in Melrose for a sight draft in the amount of 90% of the value of the grain shipment. Even a day's delay in securing an agent's signature on a bill of lading would result in substantial loss of interest to Melrose Grain, which it must then pass on to its customers. ATSF proposes to send someone from the Clovis office to Melrose to sign the bills of lading whenever such service is requested by Melrose Grain. Farmers Cooperative Elevator does its banking in Clovis and is not confronted with the bill of lading problem.

The Melrose station is equipped with radio and telephone communication equipment. The Clovis office is served by two telephone lines and two radio frequencies. It has been alleged that the radio frequencies in Clovis are congested and that one of the two telephone lines in Clovis cannot be heard when it rings. These lines handle all the business in the Clovis area, which extends south to Carlsbad, north to Amarillo, Texas, and east to Muleshoe, Texas.

The agent in Melrose is also required to perform safety functions. He must observe passing trains to spot any problems. Some of the 31 trains that daily pass through Melrose carry hazardous material. The nearest group trained to clean up hazardous materials in case of an accident would have to be sent from Denver, Colorado. Thus, such an emergency must be discovered as soon as possible. There is a substantial distance between station agents who could report an emergency. Between Clovis and Belen (a distance of 245 miles), the only other agent is stationed at Vaughn, approximately 116 miles west of Clovis.

Article XI, Section 7 of the New Mexico Constitution gives the Commission the following power:

> to require railway companies to provide and maintain adequate depots, stockpens, station buildings, agents and facilities for the accommodation of passengers and for receiving and delivering freight and express; * * * whenever in the judgment of the commission the public interests demand, and as may be reasonable and just.

The scope of review for proceedings removed to this Court from the Commission is also set forth in Article XI, Section 7:

> In addition to the other powers vested in the supreme court by this constitution and the laws of the state, the said court shall have the power and it shall be its duty to decide such cases on their merits, and carry into effect its judgments, orders and decrees made in such cases, by fine, forfeiture, mandamus, injunction and contempt or other appropriate proceedings.

This Court recently discussed the meaning of this constitutional provision as applied to a removal proceeding:

> In a removal proceeding governed by Article XI, Section 7 of the New Mexico Constitution, this Court may decide the case on the merits, without indulging in any presumptions. This rule has been expressed by stating that the Commission's order will not be disturbed if supported by "satisfactory and substantial evidence." The term "satisfactory" implies a weighing procedure.

*Mountain States Telephone and Telegraph Co. v. Corporation Commission*, 99 N.M. 1, 653 P.2d 501 (1982) (citation omitted). Therefore, after weighing the evidence, this Court makes an independent determination as to whether an order of the Commission is reasonable and just. *General Telephone Co.*

*v. Corporation Commission,* 21 N.M.St.B. Bull. 1273 (1982), 99 N.M. 749, 652 P.2d 1200 (1982).

This Court first reviewed a Commission order relating to the closing of an agency station in *Seward v. D. & R.G.,* 17 N.M. 557, 131 P. 980 (1913). In that case, the Court discussed the factors to be considered in an agency station closing. "While it is the absolute duty of a railroad company to transport freight and passengers, it is not its prime duty to provide depots, waiting rooms, station agents, telephone and telegraph facilities." *Id.* at 592, 131 P. at 992. The instant case does not deal with an absolute duty of ATSF. Therefore, the factors to be considered in determining what are adequate facilities pursuant to Article XI, Section 7 of the New Mexico Constitution are the expense of maintaining the station, the revenue derived by the railroad from the operation of the station, the number of people to be benefited, the safety of the traveling public, the demand for services, the relative location of the station, any inconvenience to the public, the present facilities and all other facts and circumstances. *See Seward, supra.* These factors have been used with slight variations since 1913. *See Southern Pacific Co. v. State Corporation Com'n,* 76 N.M. 257, 414 P.2d 489 (1966); *Village and Citizens of Grenville v. State Corporation Com'n,* 53 N.M. 259, 206 P.2d 259 (1949); *Denton Bros. v. A.T. & S.F. Ry. Co.,* 34 N.M. 53, 277 P. 34 (1929).

We will apply these same factors to the facts in the instant case by comparing this case with the most recent agency station case to come before this Court, *Matter of Missouri Pac. R. Co.,* 93 N.M. 753, 605 P.2d 1152 (1980). That case held that where the service provided by the railroad at its customer service center in Odessa, Texas, was equal, if not superior, to the service provided by its mobile agent in Hobbs, New Mexico, the railroad would not be required to maintain the mobile agent at an approximate cost of $25,000 to $26,000 per year, since that would result in economic waste.

The facts in the instant case are distinguishable from the facts in that case. In

*Matter of Missouri Pac. R. Co., supra,* the five firms whose business represented 98% of the traffic in Hobbs supported the removal of the agent. In the instant case, Melrose Grain, which generates 60% to 70% of ATSF's business in Melrose, opposes the closing of the agency station. The local agent's duties in *Matter of Missouri Pac. R. Co.* were a mere duplication of all the duties handled by the Odessa Customer Service Center. ATSF's contention that the Melrose agent is merely a superfluous middleman between customers and the Clovis office is not persuasive. ATSF cannot first take away an agent's duties and then contend that he is doing nothing. An agent is needed in Melrose to sign bills of lading and prevent the loss of interest to the farmers who deal with Melrose Grain. Any loss of interest caused by the necessity of waiting for an agent to drive from Clovis to sign such bills of lading would be more than a mere inconvenience to the people of Melrose. In *Matter of Missouri Pac. R. Co.,* the Court found that maintaining the agent would result in economic waste. In the instant case, the testimony of ATSF's accountant was that the effect on ATSF's net revenues would be minimal should the agency station in Melrose be closed. The railroad derives gross revenues of $870,000 annually from the station in Melrose, compared to a cost of approximately $32,000 to maintain the station. Safety is a factor in this case. The transportation of hazardous materials through the Melrose station and the distance between stations increase the necessity of having an agent observe all trains for potential problems.

■ The Commission's "function is to protect the public interest against unjust and unreasonable deficiencies in service." *State Corp. Com. v. A.T. & S.F. Ry. Co.,* 32 N.M. 304, 308, 255 P. 394, 395 (1927). By requiring ATSF to maintain its agency station, the Commission has prevented an unjust and unreasonable deficiency in service in the Melrose area. The Commission's order requiring ATSF to keep its agency sta-

tion in Melrose open was lawful, reasonable and just and will be upheld.

IT IS SO ORDERED.

FEDERICI and STOWERS, JJ., concur.