9 P.(2d) 139

**In re DENVER & R. G. W. R. CO.**
**No. 3733.**

Supreme Court of New Mexico.
March 8, 1932.

T. R. Woodrow and T. A. White, both of Denver, Colo., and Gilbert & Hamilton, of Santa Fé, for applicant.

**PARKER, J.**

Monero is a town consisting of 23 families and of about 118 men, women, and children. A census was taken under the Director of Census, Washington, D. C., under date of May 9, 1931, showing the population of precinct No. 32, in which Monero is situated, as 378 as of April 1, 1930. There is a popu-

lation of about 600 within a five-mile radius of Monero. There are two grocery stores and three coal mines at or very near the town. One of these coal mines is what is called a tipple mine, and has a capacity of 6 or 8 cars per day above the tipple and 10 or 12 cars on the track below the tipple. This is the Peacock mine. The two other mines are what are called wagon mines, and both load on what is called the hold track, which has a capacity of 18 or 20 cars, and is sufficient for all of the requirements of these coal mines. The Denver & Rio Grande Western Railroad Company has a station at Monero, at which it has heretofore maintained a station agent, telegraph operator, express agent, etc. The total income of the agency at Monero is $9,559, divided into $7,345.05 received from carload shipments and $956.92 from less than carload shipments. The direct expense of maintaining the station at Monero is $1,862 per year. Aside from this expense, of course, is Monero's proportion of all expenses of the entire railroad system, which so increases the cost of the Monero station as to show a net loss upon all business handled at the station of $1,772 a year.

The railroad company, hereinafter styled the applicant, filed its petition with the State Corporation Commission to be allowed to close the station of Monero. Residents of that vicinity appeared and protested against such action. Thereupon a hearing was had before the Corporation Commission and witnesses were heard as to the propriety of closing the station and as to the facts surrounding the situation. Upon such hearing, the State Corporation Commission denied the petition of the applicant, which amounted, of course, to forbidding it to close the station. Thereupon applicant filed its application for the removal of the matter to this court, and the same is here for our determination.

The attitude of the State Corporation Commission toward the question involved may, we believe, be best seen by quoting from its opinion on the subject under date of August 28, 1931, as follows:

"This matter was heard at Monero, New Mexico on June 19, 1931, and later according to agreement, briefs were presented by the parties interested, and after hearing the testimony and considering the said briefs and being fully advised in the premises, I find that an agency has been maintained at this point by the said railroad company at a profit to it and to the great advantage of the people of the community, but that at the time of said hearing and for some months before there was very little revenue received at such agency; but I further find that the loss of such revenue was almost entirely due to the actions of said railroad company because of its coal purchasing agent first requiring the coal operators at this point to give up all their private coal sale contracts in order to furnish all their coal to the railroad company and then when such private business was all gone, refusing to purchase any more of the coal output of the said mines because they would not pay him a so-called commission on such sales to the railroad company through

him. I further find that the said coal operators are gradually recovering private business and the indications are that if the agency is retained, they will be able to recover their former volume of business and thus make the said agency at said point a remunerative investment.

"I further find that if said agency is discontinued that great inconvenience and real suffering is likely to be brought on the people of this community as this is for several months during the winter season the only form of communication with the outside world, and that ranchmen and lumbermen residing long distances in the country would be required to make useless trips over difficult roads to find out whether shipments of goods and supplies have arrived, where if an agent was present, notice of such arrival could be mailed to them and such useless trips avoided.

"Therefore, I am of the opinion that the said railroad company has failed to show the reasonableness or necessity of the abandonment of said agency, but on the contrary, it appears to me that said agency at said point is an absolute necessity to the people of that community and that it is reasonable to require such agency to be maintained."

This statement was in the form of a recommendation by one of the members of the commission who heard the testimony, but the commission as a whole promptly adopted and ratified the same and made its official order denying the petition of applicant herein.

In approaching the subject, it is to be remembered that the rights of the applicant and the rights of the public are both involved and are to be considered. Randall et al. v. A., T. & S. F. Ry. Co., 34 N. M. 391, 281 P. 479. It appears from all of the testimony taken before the State Corporation Commission that all carload business can without inconvenience of any considerable amount be handled without a station agent. It is only the less than carload business that requires a station agent, so that shipments of goods could be made to or from the station without prepaying the freight. It also appears that the applicant in place of the station agent proposes to install at Monero a telegraphone with which communication with the outside can be easily accomplished. The business to be transacted at Monero, which perhaps could be more conveniently transacted through a station agent, is, as we have seen, comparatively insignificant in amount when compared to the total business of the station. It appears further that regular daily passenger service through the town is to be maintained, thus facilitating communication with the outside world. It is testified by some of the protestants against the closing of the station that for a long period during the winter months the roads surrounding Monero are almost impassable, so that in case of sickness it would be impossible to secure the services of physicians from outside the town. In this testimony the witnesses overlook the fact that, with the installation of the telegraphone at Monero, communica-

tion with other towns can be had so that physicians can go to Monero on the train, as they would be compelled to go in any event. The recipients of less than carload lots of freight or express may easily engage some one at the station to notify them by the telegraphone or by messenger or mail, and such business can be thus transacted without any considerable inconvenience.

We are at a loss to understand just why the State Corporation Commission arrived at the conclusion it did based upon what we consider such unsatisfactory evidence. One of the men testified that a man by the name of Ferguson demanded a commission of 10 cents per ton on coal that was to be shipped out of Monero, but the evidence fails to show satisfactorily that this man Ferguson was authorized by the railroad company to make any such charge, and in fact it appears that he was a broker living in Denver and was engaged in marketing coal for which he charged a commission in sales to the railroad company or others.

Our attitude in the premises is well pointed out in several cases heretofore decided by the court, and we do not deem it necessary to go further in this case. See Seward et al. v. D. & R. G. Ry. Co., 17 N. M. 557, 131 P. 980, 46 L. R. A. (N. S.) 242; Denton Bros. et al. v. A., T. & S. F. Ry. Co. et al., 34 N. M. 53, 277 P. 34; Randall et al. v. A., T. & S. F. Ry. Co., 34 N. M. 391, 281 P. 479; San Juan Coal & Coke Co. v. Santa Fé, S. J. & N. R. R. (N. M.) 298 P. 663.

The order of the State Corporation Commission under the facts and circumstances shown in this case cannot be sustained, and it is so ordered.

BICKLEY, C. J., and WATSON and SADLER, JJ., concur.

HUDSPETH, J., did not participate.