414 P.2d 489

**SOUTHERN PACIFIC COMPANY,**
**Appellant,**

v.

**STATE CORPORATION COMMISSION of**
**the State of New Mexico, Appellee.**

**No. 7971.**

Supreme Court of New Mexico.

May 16, 1966.

White, Gilbert, Koch & Kelly, Santa Fe, for appellant.

Boston E. Witt, Atty. Gen., Wayne C. Wolf, Asst. Atty. Gen., Santa Fe, for appellee.

NOBLE, Justice.

Following an order of the State Corporation Commission denying its application to change the status of its station at Tularosa to a non-agency station, Southern Pacific Company has removed the cause to the Supreme Court under the provisions of Section 7, Art. XI of the State Constitution, providing, among other things, that:

"* * * Any company, corporation or common carrier which does not comply with the order of the commission within the time limited therefor, may file with the commission a petition to remove such cause to the Supreme Court, and * * * the Supreme Court may, upon application in its discretion, or of its own motion, require or authorize additional evidence to be taken in said cause; * * *

* * * the said court shall have the power and it shall be its duty to decide such cases on their merits, and carry into effect its judgments, orders and decrees made in such cases, by fine, forfeiture, mandamus, injunction and contempt or other appropriate proceedings."

The railway company operates a railroad across New Mexico, a portion of which extends from El Paso, Texas to Tucumcari, New Mexico. Tularosa, located 12 miles north of Alamogordo, is on the main line of the railroad, had a 1960 population of 3200, and serves the trade area of seven small communities. Tularosa is connected to other cities and towns in New Mexico and adjoining states by paved U. S. highways. Tularosa is not now operated as a passenger station. All telegrams are handled by the Western

Union office in town and no mail is handled by the railroad or its station agent. All express packages are received and delivered by the Railway Express Agency office in Tularosa. It is not contended that an agent at the station is required for public safety. The sole question, therefore, is that of convenience to the public as a frieght station and whether under the conditions shown to exist, the commission's order is reasonable and just considering the interest and rights of the public and of the railroad, both of which are involved and are to be considered. Randall v. Atchison, T. & S. F. Ry., 34 N.M. 391, 281 P. 479; Denton Bros. v. Atchison, T. & S. F. Ry., 34 N.M. 53, 277 P. 34; In re Denver & R. G. W. R., 36 N.M. 106, 9 P.2d 139, 140.

The testimony before the State Corporation Commission makes it appear that both carload and less-than-carload business can be handled through the Alamogordo station without any great inconvenience to shippers or consignees of freight. The record discloses that incoming cars are placed on the house track where the freight is loaded or unloaded by the shipper or consignee; the way bill left with the agent who notifies the consignee; and, the charges are computed and collected by the agent. The physical handling, at a non-agency station of both incoming and outgoing carload freight will not be changed. The billing and notices will be handled by the agent at Alamogordo, on duty 24 hours a day, seven days a week. Most such business can be transacted by telephone, on which there is no toll charge. Almost all outgoing freight is sent collect, but most shippers and consignees can obtain approved credit. Actually, as will be pointed out, most of the less-than-carload shipments are by truck rather than by rail.

The record discloses a total revenue attributable to the Tularosa station of $9583.-26 for the twelve-month period ending May 31, 1965, and direct expense of maintaining the station of $7625.16, or 80% of the total revenue, as opposed to a system-wide station expense of only 4.71% of a station's revenue. The less-than-carload revenues declined from $4161.61 in the 1962–63 period to only $240.90 during the 1964–65 period. It appears that for the 1964–65 period, there were 18 consignees of 57 carload shipments and 19 consignees of less than carloads. Thus, in the twelve-month period, there were shipped into Tularosa 4.75 carloads of freight per month and 2.25 less-than-carload lots. No shipments originating in Tularosa were made during that year except three carloads of experimental logs. It thus appears by these computations that the total receipts to be credited to the Tularosa station above direct costs attributable to that station is $1958.-10, to pay expenses such as transportation for the freight, maintenance of right of

way and rolling stock and general operating expenses.

Since the Tularosa freight business is proposed to be handled by the agent at Alamogordo, twelve miles away, in much the same manner as with a local agent, principally by telephone on which there is no toll charge, and that most consignees and shippers can obtain approved credit, it appears that relatively little inconvenience would result to consignees or shippers by the change. Only three consignees protested, claiming inconvenience, and a review of their testimony makes it doubtful whether they would actually be seriously inconvenienced by the change. Denton Bros. v. Atchison, T. & S. F. Ry., supra, said: "In so far as that inconvenience affects them personally, it is doubtful if it should be deemed public inconvenience." Furthermore, as in Denton Brothers, we must proceed upon the assumption that the persons inconvenienced are few. That was said in that case to be " 'an important factor in determining what is to be done.' "

It appears that twelve carloads of cattle were shipped from Tularosa in 1962–63, and six in the 1963–64 period. It was shown that in most instances it is more convenient for cattle shippers to use trucks. In any event, the change to a non-agency station would not affect them. Cattle cars are ordered several days in advance and spotted at a particular location, but the local agent is not present during loading, in any event. It is true that the mayor and seven residents, all non-users of the railroad, protested, expressing concern for the future growth of the municipality, but as Denton Brothers said, respecting such concern:

"It is perfectly natural that every community should aspire to the best railroad service to be had. We have full sympathy with such aspirations. Yet it is to be remembered that, under our system of public control of rates and service, the general public, speaking broadly, loses in cost what it gains in service. So the railroad, in resisting demands for any uneconomic service, really represents the true interest of the general public."

It was pointed out in Village and Citizens of Grenville v. State Corp. Com'n, 53 N.M. 259, 206 P.2d 259, that the carload business was not considered in Denton Brothers, as contributing to much inconvenience because of the requirement that freight charges be paid in advance. The testimony in this case is that most freight is shipped collect, but that, in any event, most shippers could obtain approved credit and be billed later. Under the testimony here, there would be less inconvenience to carload business than in Denton Brothers. Grenville further noted that in Denton the

less-than-carload income slightly exceeded $1300, while the expense of operation of the station with an agent was $2400, or a loss of $1100 annually. In the instant case, by comparison, the total less-than-carload revenue during the 1964–65 period was only $806.80, and the station expense with an agent $7,625.16, or a loss of $6,818.36, based upon the same computations.

We find nothing to distinguish the facts of this case from Randall v. Atchison, T. & S. F. Ry., supra; In re Denver & R. G. W. R., supra; In re Southern Pac. Co., 38 N.M. 325, 32 P.2d 814; Denton Bros. v. Atchison, T. & S. F. Ry., supra; and Petition of Town of Grenville, 46 N.M. 3, 119 P.2d 632, in which this court refused to enforce orders which would result in economic waste to the railroad and neither a corresponding benefit to the public nor a serious inconvenience to shippers. Grenville expressed the situation in this case when it was there said:

"  *   *   * To require the company under the facts of the case to maintain an agent at Grenville would be unjust and unreasonable, and purely economic waste.  *   *   *"

The order of the State Corporation Commission cannot be sustained and will be set aside. It is so ordered.

CHAVEZ and MOISE, JJ., concur.