730 P.2d 448

**In re Adoption of Railroad Rules and Regulations: SOUTHERN PACIFIC TRANSPORTATION COMPANY, the Atchison, Topeka and Santa Fe Railway Company, Appellants,**

v.

**CORPORATION COMMISSION of the State of New Mexico, Appellee,**

**United Transportation Union, Intervenor-Appellee.**

**No. 16135.**

Supreme Court of New Mexico.

Dec. 11, 1986.

Rehearing Denied Dec. 31, 1986.

White, Koch, Kelly & McCarthy, Benjamin Phillips, Sumner S. Koch, Santa Fe, for appellant Southern Pacific.

Campbell & Black, Jack M. Campbell, Santa Fe, for appellant AT & SF.

Christopher Carlsen, Gen. Counsel, Corp. Com'n, Carol Baca, Asst. Atty. Gen., Santa Fe, for appellee Corporation Com'n.

Jones, Gallegos, Snead & Wertheim, James G. Whitley, Santa Fe, for intervenor appellee.

## OPINION

WALTERS, Justice.

In this removal proceeding Petitioners, the Railroads, challenge Respondent Commission's Rules 2 and 3. Rule 2 requires the use of a manned caboose on certain trains, including "through" freights exceeding 2000 feet in length, and the challenged portions of Rule 3 require certain methods of reporting railroad accidents. In support of the rules, which followed two public hearings before the Commission regarding train accidents and derailments in New Mexico and elsewhere, the United Transportation Union (UTU) has intervened.

Although the parties raised ten issues in their briefs, we are convinced after thorough research and analysis of the questions presented and the considerations applicable to this matter, that only one procedural matter and one constitutional issue need be discussed with regard to the Commission's Rule 2. We discuss, additionally, Railroads' attacks upon Rule 3 made solely upon the ground of federal preemption. We conclude that Railroads' challenge to Rule 2 must be upheld; that its attack on Rule 3 is sustained in part and overruled in part.

## I. Jurisdiction to Review Rules & Regulations on Removal

At the outset, the Commission urges that its adoption of rules of general application and prospective effect is a purely legislative function and that, under N.M. Const. art. XI, Section 7, only the Commission may petition for removal, and then, only for the purpose of enforcing its rules. Other parties, it says, may seek removal only if the Commission has entered an order arising out of its quasi-judicial function which determine the rights of individual parties. It refers to *State Corporation Commission v. Mountain States Tel. & Tel. Co.*, 58 N.M. 260, 270 P.2d 685 (1954).

The latter proposition was disposed of by our earlier order denying Commission's Motion to Dismiss for lack of jurisdiction. At that time we decided, in effect, that whether the Commission regulates by rule or by order, the validity of its exercise of regulating power is reviewable by this Court. On the issue of removability, the Commission did file, concurrently with Railroads' petition, its own separate petition for removal for purposes of enforcement. If the contention of the Commission on this portion of its initial argument had any merit, it was waived. We therefore consider those issues raised on removal which we think dispositive of the proceeding.

## II. Authority of the Commission to Promulgate Rules 2 and 3

The Commission, opposing Railroads' contention that the Commission is without authority to promulgate Rules 2 and 3, urges us to recognize its "broad and plenary power," at the same time prefacing its argument with the acknowledgement that "the Commission is a constitutionally created institution that derives its powers from the New Mexico Constitution itself." (Respondent's Answer Brief.)

Within the latter phrase, we believe, lies the key to the entire matter. We are supplied by the parties and intervenor with an almost overwhelming number of state and federal case citations, and an abundance of scholarly argument regarding the police

power of a state to enact safety legislation even though it impinges to some degree on interstate commerce.[1] Against that authority, we are urged to evaluate and balance, with the great deference due to state safety measures, any burden such exercise of local police power would place upon interstate commerce, *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, Rock Island & Pacific Railroad Co.*, 393 U.S. 129, 89 S.Ct. 323, 21 L.Ed.2d 289 (1968), and to determine whether the regulations overcome the fatal weaknesses, if interstate commerce is affected, of slight, problematical, or illusory safety interests. *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959).

We have no quarrel with the principles advanced by both the proponents and opponents of the rules in question, but the crucial distinction between state rules and regulations upheld as non-invasive of the protections to interstate commerce is obscured in the arguments. In all of the cases cited, the exercise of regulatory power has been through statutes enacted by state legislatures, or by rule or regulation of a commission to which the state legislative power to regulate has been delegated by the legislature. In that sense have the decisions of the Supreme Court discussed the validity or invalidity of "state legislation" or "state regulation." Although none of the cited cases recite the language of the state document or statute which granted the regulation-making power to the body which exercised that authority, it is clear either that none of them were constrained by such language as appears in our constitution, or if they were, the basic scope of the regulating body's authority was never raised. That question is squarely before us here.

Article XI, Section 7 of the New Mexico Constitution grants, in abbreviated and pertinent part, the following authority to the State Corporation Commission:

> The commission shall * * * have power and be charged with the duty to make and enforce reasonable and just rules requiring the supplying of cars and equipment for the use of shippers and passengers, and to require all intrastate railways * * * to provide such reasonable safety appliances * * * as may be necessary and proper for the safety of its employees and the public, and as are now or may be required by the federal laws, rules and regulations governing interstate commerce.

Thus the empowering language itself limits the application of any safety appliance requirements of the Commission to *intrastate* railways. The Commission was not granted the broad powers which state legislatures might exercise, as affects interstate commerce, if the balancing analysis were to permit the conclusion that the local regulation only incidentally burdens interstate commerce.

The Commission's argument, although proclaiming its interest in mandating sufficient cars and equipment (to include cabooses), focuses principally and primarily upon the safety features of its requirement for cabooses. This is probably so because the Constitution has made the "cars and equipment" oversight applicable when necessary "for the use of shippers and passengers" and not otherwise. The Commission

1. *E.g., Sporhase v. Nebraska*, 458 U.S. 941, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982); *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981); *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); *Southern Pac. Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); *Terminal Railroad Association of St. Louis v. Brotherhood of Railroad Trainmen*, 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571 (1943); *South Carolina State Highway Department v. Barnwell Bros. Inc.*, 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938); *Electrolert Corporation v. Barry*, 737 F.2d 110 (D.C.Cir.1984); *American Trucking Associations, Inc. v. Larson*, 683 F.2d 787 (3rd Cir.1982); *Norfolk and Western Ry. Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 413 A.2d 1037 (1980); *San Juan Coal & Coke Co. v. Santa Fe, S.J. & N. Ry. Co.*, 35 N.M. 512, 2 P.2d 305 (1931); *State Corporation Commission v. Atchison, T & SF Ry. Co.*, 32 N.M. 304, 255 P. 394 (1927); *Seward v. Denver & RG Ry. Co.*, 17 N.M. 557, 131 P. 980 (1913).

must, therefore, rest its justification for the rule upon the "safety appliance" clause. But only one paragraph of Commission's 45–page answer brief addresses the decisive words: "intrastate railways." In a single sentence it asserts, without reference to any authority, that "[t]he Commission interprets the word to mean 'railroad operations within New Mexico.'" That it would rely upon such an interpretation makes patent its awareness that its regulatory power is not as pervasive as the legislature's might be if we were here dealing with a statute—to which the precedents cited would surely apply—rather than with a regulation formulated by a body whose powers have been strictly limited by the provisions of the constitutional grant.

■ The Commission's "interpretation" is not acceptable. It may be conceded that railroads operating in interstate commerce, for a part of their interstate journeys, do travel within the borders of each state through which they pass. But they do not then become individual and separate intrastate operations during those portions of a longer journey between several states. An intrastate operation has the long-recognized meaning of being "that operation which during its whole course of * * * transportation is within the jurisdiction and confines of a single State." *American Airlines v. Battle,* 181 Va. 1, 7, 23 S.E.2d 796, 799 (1943). "Intrastate commerce is that commerce which is during its *whole* course of transportation within the jurisdiction of a *single* state." *Yohn v. United States,* 280 F. 511, 512 (2d Cir.1922) (our emphasis).

■ The Commission may only require "all *intrastate* railways" to furnish reasonable, necessary and proper safety appliances. It has no power to impose such requirements on interstate railways. Indeed, it has no constitutional authority whatever to even attempt to impose its requirements for a safety appliance upon an interstate train, because its jurisdiction in that area is specifically limited to "intrastate" railways, unless the safety appliance is "required by the federal laws, rules and regulations governing interstate commerce." N.M. Const. art. XI, § 7. Consequently, we are not called upon to determine whether, when such a requirement has been ordered, it can be sustained as a reasonable local safety measure that does not excessively burden interstate commerce. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). The Commission acted beyond its powers in the first instance; we cannot gloss over that excess of power by analyzing how a safety order that might otherwise be presumptively valid if promulgated by another body with broader powers might withstand attack as having only a minimal impact on interstate commerce. *Cf. Pike v. Bruce Church, Inc.*

We hold, therefore, that Rule 2 is invalid as beyond the jurisdictional authority of the Commission to promulgate or enforce.

### III. Validity of Rule 3

■ Both parties agree that Rule 3A requiring Railroads to submit copies of their federal accident reports to the Commission pertains only to accidents in New Mexico, and that portion of the rule is not challenged. *See* 49 C.F.R. § 225.1 (1985). Railroads insist, however, that subsections B and C, which require immediate telephonic reporting of certain accidents to the Commission, are preempted by federal law (*see id.*) because the Commission is not a certified participant in the Federal Railroad Administration program of cooperative oversight, and because the rules require reporting under circumstances not delineated in the federal regulations.

The procedure for participating in the organization that enforces federal regulations is set forth in 45 U.S.C. Section 435 (1982). It requires the state agency to submit to the Secretary of Transportation an annual certification which includes a report of all railroad accidents or incidents reported to the state agency during the preceding year. § 435(b). Thus, even if the Commission is not now a certified participant (a fact not clearly established by the record), it must exact certain reporting

requirements from Railroads in order to become a certified participant. We are not persuaded that mere non-participant status alone destroys the Commission's rule-making power.

■ Congress has expressed a total preemptive intent, however, with respect to accident reporting requirements, in 49 C.F.R. Section 225.1 (1985). That regulation provides, in part, that "[i]ssuance of these regulations under the Federal Railroad Safety Act preempts States from prescribing accident/incident reporting requirements." In construing 45 U.S.C. Sections 434 and 435(b) and the corresponding 49 C.F.R. Section 225.1, the Third Circuit Court of Appeals concluded that "[Section 225.1] does not prevent [states] from requiring rail carriers to provide immediate notification of accidents in order to enable the states to launch promptly their own investigations. Nor does it forbid the states from requiring the railroads to furnish them copies of the monthly reports filed with the F[ederal] R[egulatory] A[dministration]." *National Association of Regulatory Utility Commissioners v. Coleman*, 542 F.2d 11, 15 (3d Cir.1976). Rule 3B, however, requires telephonic reporting of some accidents that are not required to be reported under 49 C.F.R. Section 225.9 (1985). To the extent that subsection B is thus inconsistent with the federal regulation, that portion is preempted, but the remaining requirements of B and C are not vulnerable to that objection.

■ Railroads object also to subsection D which requires telephonic reporting to the state police of train accidents involving hazardous cargo "pursuant to 49 C.F.R. 172." Railroads protest on grounds that: (1) subsection D is impermissibly vague; (2) it conflicts with and is preempted by federal requirements for reporting accidents involving hazardous materials in transit; (3) it conflicts with New Mexico's Emergency Management Act, NMSA 1978, Sections 74–4B–1 to 74–4B–11 (Repl.Pamp.1986); and (4) the Commission lacks authority to require reporting to the state police.

The purpose of the Emergency Management Act is to enable state employees and officials to respond quickly and effectively to accidents involving hazardous materials, NMSA 1978, Section 74–4B–2 (Repl.Pamp. 1986), and the chief of the state police is charged with authority to administer its provisions. NMSA 1978, § 74–4B–4. Rule 3D facilitates the purpose behind the Act, *i.e.*, rapid and effective response to emergencies. Consequently, subsection D of Rule 3 and the Emergency Management Act are not in conflict.

■ The Commission's authority to require accident reports in a manner consistent with federal law has already been discussed, and Railroads' reliance on the preemptive language of the Hazardous Materials Transportation Act, 49 U.S.C.App. Section 1811 (1982), is misplaced. That statute specifically recognizes that local requirements for transporting hazardous materials are preempted *only* if they are inconsistent with requirements and regulations promulgated under the Act. Rule 3D requires reporting to the state police of all accidents involving hazardous materials listed in 49 C.F.R. Part 172. Section 171.15 of that regulation requires notification to the Transportation Department only when those accidents result in injury or property damage. Compliance with subsection D in no way precludes or prevents compliances with 49 C.F.R. Section 171.15 (1985); therefore, it cannot be said to be inconsistent with the federal regulations.

■ Railroads next contend that Rule 3D is impermissibly vague because it does not define the term "accident/incident," and that the federal definition of "accident" includes events unrelated to the transportation of hazardous materials. *See* 49 C.F.R. § 225.5(B) (1985). Because Rule 3D was intended to facilitate compliance with and to promote the purposes of the Emergency Management Act, the definition of the challenged term can be related directly to the definition found in the Act at NMSA 1978, Section 74–4B–3(A) (Repl. Pamp.1986). When so correlated, Rule 3D is not impermissibly vague. Subsection D

thus withstands the attacks upon its validity.

■ We state, in passing, that we do not consider Railroads' half-hearted challenge in its opening statement that "Railroads doubt the Commission's authority to promulgate Rules 4, 6, and 7, but will wait the Commission's identification of their constitutional or statutory source of authority before addressing that issue." The attempted follow-up in their Reply Brief, to the effect that, because the Commission did not respond to their baited doubt, "it must be presumed that the Commission cannot locate any authority," is ineffective to present an issue for determination. This appears to us to be a ploy to shift to Respondent the initial burden of briefing issues Petitioner might wish to argue. That is not the rule governing the right to appellate review; consequently, we do not consider whether Rules 4, 6 and 7 are valid or not.

## IV. Cost of Appeal

The Commission ordered Railroads to bear the cost of preparing the appellate record ($1,589.00). Railroads offer five reasons for reversing that order: the New Mexico Constitution requires the Commission to bear the cost because removal is the "obligatory final step in any contested Art. XI, Section 7 proceeding"; it has been the Commission's consistent practice to bear the cost of removal; the Commission may not impose costs on petitioners when it has instituted a separate removal of the same matter on its own motion; the costs are unwarranted and excessive because the Commission is statutorily required to keep three copies of each transcript of proceedings (NMSA 1978, §§ 63-7-13, -14); and, lastly, Railroads should not pay costs if they prevail. *See* NMSA 1978, Civ.App. Rule 27 (Repl.Pamp.1984). Our response:

1. Judicial review is the "obligatory final step" in many kinds of contested proceedings. That fact alone does not entitle the party seeking review to recover the cost of review. What Railroads term as the Commission's "nondiscretionary duty" to remove its proceedings exists only where there has been refusal to comply with its orders or rules. Railroads could have avoided removal and its costs simply by complying with the rules.

2. We are not persuaded, either, by Railroads' estoppel argument. They cite no authority for the proposition that the Commission is bound by its prior administrative practice and there is no evidence of what, in fact, that practice has been.

3. NMSA 1978, Section 63-7-13 imposes upon the Commission a duty to keep a file of each proceeding, which is to include the evidence and testimony, transcribed, in triplicate. Section 63-7-14 requires the clerk of the commission to transfer the file to this court upon removal. By its terms, the Commission's "Order Relating to Record Cost" (which imposed on Railroads the cost of preparing the record on removal) is based on "Rule 90 of the Commission's Rules of Procedure * * *." In its brief, however, the Commission bases its authority to assess costs on "Rule 64 and its predecessors."

We cannot decide whether the Commission may, by its procedural rules, pass on to regulated entities the cost of records that the Commission is required by statute to keep, especially when it has not included the pertinent regulations in the record. We are not persuaded by the Commission's argument that Section 63-7-13 imposes a duty on the stenographer to make a triplicate transcription, but imposes no duty on the Commission to pay for or keep the triplicate record. If the Commission is in fact failing to keep three copies of the transcript in the case file, it is in violation of the statute. Nor are we convinced that NMSA 1978, Section 63-7-11 authorizing the clerk to charge for copies of the complete record applies to the record on removal, especially since Section 63-7-13 requires the Commission to obtain and keep three copies on file, and requires the clerk to send the complete file to us when a matter is removed. We doubt that there was any intention on the part of the legislature to encourage, by application of Section 63-7-11, the "chilling effect" of discouraging removal procedures by pre-assessing the petitioners for transcript costs already paid by the Commission. In any event, we think

it more appropriate in such cases, since a transcribed record is already available, that this Court determine who shall bear the costs on removal.

4. Although each party has prevailed on certain issues and thus there is no single "prevailing party," *see* NMSA 1978, Civ. App.R. 27(a) (Repl.Pamp.1984), it nevertheless would be unfair and unreasonable to shift the cost of an already prepared record to the party which has enjoyed the greater success on removal. Since Railroads first petitioned for removal, the docket fee paid by it shall not be assessed against the Commission.

The case is remanded to the Commission with directions to vacate its Rule 2, to modify Rule 3, to withdraw its order relating to record costs, and for such other proceedings as may be necessary, in conformance with this Opinion.

IT IS SO ORDERED.

FEDERICI, J., concurs.

RIORDAN, J. (concurs in the result only).